**EXHIBIT "2"**

F. BARI NEJADPOUR, Esq. (SBN 216925)
L.A. LAW, INC.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, CA 90211
Telephone:    (310) 954-9595
Facsimile:    (800) 760-1107

Attorneys for Plaintiffs;
*Jack Shemtov, Simon Yafadonay,*
*and Socaldeal Inc.*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 26 2017

Sherri R. Carter, Executive Officer/Clerk
By:_____, Deputy
Moses Soto

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES –
## CENTRAL DISTRICT- STANLEY MOSK COURTHOUSE

JACK SHEMTOV, an individual, SIMON
YAFADONAY, an individual, AND
SOCALDEAL INC., a corporation.

            Plaintiffs,

            vs.

1 WEST CAPITAL LLC, a foreign llc.,
AND 1 GLOBAL CAPITAL LLC, a
business entity, AND DOES 1 TO 10,
INCLUSIVE.

            Defendants.

) Case No:   **BC 6 8 1 3 6 6**
)
)
)
)
) **PLAINTIFF'S COMPLAINT**
)
)
)
) (1)   **ELDER FINANCIAL ABUSE**
) (2)   **USURY**
) (3)   **UNCONSCIONABLE CONTRACT**
)
) **DEMAND FOR JURY TRIAL**
)
)
)
)

COMES NOW, Plaintiffs, JACK SHEMTOV, an individual, SIMON YAFADONAY, an individual, and SOCALDEAL INC., a corporation (hereinafter "Plaintiffs"), complains of causes of action against Defendants, 1 WEST CAPTIAL LLC, a foreign business entity, 1 GLOBAL CAPTIAL LLC, a business entity; and DOES 1 through 10, and each of them, alleges as follows:

### GENERAL ALLEGATIONS

1.  The events or omission giving rise to the claim occurred in the County of Los Angeles, State of California.

L.A. LAW, Inc.
F. Bari Nejadpour, Esq.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, California 90211

**PARTIES**

2. At all times relevant herein, Plaintiffs were a resident of the County of Los Angeles, State of California.

3. Plaintiffs is informed and believes and thereon alleges that, at all times herein mentioned, Defendant 1 WEST CAPTIAL LLC (hereinafter "West"), a foreign entity, was situated and doing business in the County of Broward, State of Florida.

4. Plaintiffs are informed and believes and thereon alleges that, at all times herein mentioned, Defendant 1 GLOBAL CAPTIAL LLC (hereinafter "Global"), a business entity, was situated and doing business in the County of Broward, State of Florida.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who are therefore sued by those fictitious names pursuant to the provisions of California *Code of Civil Procedure,* section 474. Plaintiff is informed and believes, and therefore alleges, that each of those Defendants was in some manner tortuously responsible and liable herein for fraudulent, negligent, wanton, reckless, and tortious conduct for the events and happenings alleged in this complaint and legally caused the injuries and damages alleged herein. When the true names, identities or capacities of such factiously designated Defendants are ascertained, Plaintiffs will amend this Complaint to show their true names and capacities together with the proper charging allegations.

6. At all times herein mentioned, all Defendants, whether or not specifically identified or designated herein as a DOE, and each of them, and their aggregates, corporates, associates, and partners were the agents, employees, servants, partners, independent contractors, joint ventures, and participants with all other Defendants, and with each other, and in doing things hereinafter mentioned, were agents, employees, servants, assignee, permissive user, partners, joint ventures, and successors in interest of each other and participants with all other Defendants and were acting within the time, purpose or scope of such agency or employment or permission; and all acts or omissions alleged herein of each such Defendant were authorized, adopted, approved, or ratified by each of

L.A LAW, Inc.
R Bari Nejadpour, Esq.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, California 90211

LA LAW, Inc.
F. Bari Nejadpour, Esq.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, California 90211

the other Defendants.

## BACKGROUND ALLEGATIONS

7. On or about January, 2017, Plaintiffs recognized that they were in financial constraints and decided to seek out a loan to help their business and their livelihood temporarily and to hold them over until their business and finances stabilized.

8. On February 16, 2017, Plaintiffs and Defendant West entered into an "ACH Merchant Agreement" (AGREEMENT 1) whereby said Defendant loaned to Plaintiffs $250,000, with a periodic amount of $1,789.77 daily for about eight months.

9. A True and Correct copy of the AGREEMENT 1 is attached herewith as **Exhibit "A"**.

10. On July 12, 2017, Plaintiffs and Defendant West entered into a second "ACH Merchant Agreement" (AGREEMENT 2) whereby said Defendant loaned to Plaintiffs $225,000, with a period amount of $1959.18 daily for about 7 months.

11. A True and Correct copy of the AGREEMENT 2 is attached herewith as **Exhibit "B"**.

12. On or about September, 2017, Plaintiffs realized that they would be financially incapable of repaying the loans and sought for them to be modified.

13. On October 3, 2017 Global an arm of West assisted in negotiating a "MODIFICATION OFFER" through email.

14. A True and Correct copy of the "MODIFICATION OFFER" is attached herewith as **Exhibit "C"**.

15. In the email it states that after review of bank statements, the following options are available: that AGREEMENT 1 would receive a 10 day extension for a fee of $4,295.44, with the daily payment being reduced $1,073.86 for 10 days, and that AGREEMENT 2 would receive a 10 day extension for a fee of $4,702.03, with the daily payment being reduced to $1,175.50 for 10 days. Then the original daily payment amounts would be reinstated.

16. Plaintiffs agreed that this too was financially impractical for them to bear and are bringing this Complaint in the belief that West and Global should either rescind or at the very least modify the contract with a reasonable interest rate.

LA LAW, Inc.
F. Bari Nejadpour, Esq.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, California 90211

## FIRST CAUSE OF ACTION

**(Only PLAINTIFF "JACK SHEMTOV" against ALL DEFENDANTS and DOES 1 to 10**

**Inclusive)**

### FINANCIAL ELDER ABUSE

### UNLIMITED CIVIL CASE

17. Plaintiff, Jack Shemtov, (hereinafter "Shemtov") is born on October, 24, 1949 and in accordance to Welfare and Institutions Code § 15610.27 is an "Elder" means any person residing in this state, 65 years of age or older.

18. Shemtov incorporate by reference each and every prior and subsequent allegation of this Complaint as though fully set forth within.

19. Shemtov's business is located in Culver City, California and at all times relevant to this action and was over the age of 65, and suffered from the following physical or mental limitations that restricted his ability to carry out normal activities or to protect his rights.

20. Defendant, <u>West</u>, at all relevant times stood in a position of trust to Plaintiffs and had fiduciary duties to Shemtov in that it was an authorized and licensed finance lender, license #60DBO-35888. Shemtov reposed great trust and confidence in the Defendants as a licensed finance lender, and the Defendants occupied a fiduciary relationship with the Plaintiffs at all relevant times. Shemtov's trusted and relied on the Defendants to deal with them fairly and reasonably. Consequently, Defendants were obligated to faithfully provide Shemtov with fair and reasonable loan terms.

21. On February 16, 2017, &, July 12, 2017, Defendant <u>West</u>, acting in its capacity, convinced the elder Shemtov that the terms of the loan were reasonable and allowed Shemtov to incur astronomical interest in regards to repayment of the loans.

22. On October 3, 2017, Defendants, <u>West</u> & <u>Global</u> acting in their capacity, attempted to convince the elder Shemtov that the MODIFICATION OFFER was reasonable, in an attempt to further coax them into taking on astronomical interest rates in regards to repayment of the loans.

23. Defendants' actions wrongfully allowed Shemtov to incur astronomical interest in regards to repayment of the loans, and further attempted to retain said rates through the MODIFCIATION OFFER, which also added a hefty fee on top of it.

24. Defendants took, secreted, appropriated, obtained and/or retained property of elders or dependent adults by undue influence as defined by *Cal. Welf. & Inst. Code* §15610.70, in that Defendants unduly influenced the Shemtov to act or refrain from acting by overcoming Shemtov's free will, resulting in inequity. Specifically, Defendants used its position of power as a financial lender to get Shemtov to agree to an ACH Merchant Agreement, so that it could charge an astronomical interest rate, after Shemtov had already expressed the need for money because of their financial constraints, and attempted to retain such rates by their "MODIFICATION OFFER".

25. Defendants can be deemed to have taken, secreted, appropriated, obtained, and/or retained property of elders or dependent adults with the intent to defraud, because Defendants knew or should have known that their conduct was likely to be harmful to the elders or dependent adults in that no reasonable adult would intend to pay higher interest rates (roughly 26% & 28% respectively) then is legally allowed, especially in light of their financially situation, but solely intended to coax them for their financial gain.

26. Defendants', taking, secreting, appropriating, obtaining and/or retaining of Shemtov to such an unreasonable loan agreement constitute s elder financial abuse as defined by *Cal. Welf. & Inst. Code* §15610.30, and Shemtov is entitled to the remedies provided by *Cal. Welf. & Inst. Code* §15657.5.

27. Shemtov is entitled to general damages for the amounts of the loans paid from Defendants, which will become clear at a later time

28. Shemtov is entitled to modification of the merchant agreements to a 10% interest rate.

29. Shemtov is entitled to have the merchant agreements rescinded.

30. Shemtov has incurred, and will continue to incur, attorney's fees and costs in this litigation. Shemtov, if successful in this action, are entitled to recover such fees and costs from Defendants, under the provisions of *Cal. Welf. & Inst. Code* §15657.5(a).

LA LAW, Inc.
F. Bari Nejadpour, Esq.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, California 90211

31. In committing the actions and conduct described above, Defendants acted with recklessness, oppression, fraud, and malice, and Shemtov therefore is entitled to an award of exemplary or punitive damages pursuant to *Cal. Welf. & Inst. Code* §15657.5 and *Cal. Civ. Code* §3294.

32. Pursuant to *Cal. Civ. Code* §3345, Defendants are liable for treble damages and penalties because: a) Defendants knew or should have known that its conduct was directed at senior citizens; and b) Shemtov is senior citizens and is more vulnerable than others to Defendants' conduct because of his age and the superior position of Defendants regarding its actions including the inducement of Shemtov to sign a ACH Merchant Agreement and the economic damages resulting from Defendants' conduct.

## SECOND CAUSE OF ACTION

### (All PLAINTIFFS Against all DEFENDANTS and Does 1 to 10 Inclusive)

### USURY LAWS

33. Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as though fully set forth within.

34. <u>West</u> & <u>Global</u> entered into two loan agreements with Plaintiffs, which required that interest be charged at a rate of roughly 26% and 28% respectively.

35. The *California Constitution Article 15*, Section 1, subsection (2) states the rate of interest "For any loan or forbearance of any money, goods, or things in action for any use…, at a rate not exceeding the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding…, (i) the date of execution of the contract to make the loan or forbearance."

36. Admittedly, *California Corporations Code* §25118 subsection (a) states "An evidence of indebtedness issued…or guaranteed by an entity that is an affiliate of the borrower that, on the day the evidence of… guaranty is first issued…, has total assets of at least two million dollars according to its then most recent financial statements…, shall be exempt from the usury provision of the California Constitution."

LA LAW, Inc.
F. Bari Nejadpour, Esq.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, California 90211

LA LAW, Inc.
F. Bari Nejadpour, Esq.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, California 90211

37. However, subsection (e) (1) of §25118 states "This section does not apply to: Any evidence of indebtedness issued or guaranteed (if the guaranty is part of the consideration for the indebtedness) by an individual," which is exactly who guaranteed the original loan (Jack Shemtov & Simon Yafadonay).

38. Moreover, subsection (f) (1) states "The exemptions created by this section shall only be available in a transaction that meets either of the following criteria: The lender and either the issuer of the indebtedness or the guarantor..., or any of their respective officers, directors, or controlling persons..., have a preexisting personal or business relationship."

39. Plaintiffs, West, and Global have never had any other relationship be it personal or business until these Merchant Agreements were executed.

40. Ultimately, subsection (e) (1) & (f) (1) provide an exception and exemption from the corporate exemption provided in *California Corporations Code §25118* against California's usury laws.

41. Plaintiffs are entitled to have the merchant agreements modified to the proper maximum rate of 10% according to *California Constitution Article 15,*

42. Plaintiffs are entitled to have the merchant agreements rescinded because they were never properly executed.

43. Plaintiffs have incurred, and will continue to incur, attorney's fees and costs in this litigation. Plaintiffs, if successful in this action, are entitled to recover such fees and costs from Defendants.

### THIRD CAUSE OF ACTION

### (All PLAINTIFFS Against all DEFENDANTS and Does 1 to 10 Inclusive)

### UNCONSCIONABLE CONTRACT

44. Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as though fully set forth within.

45. Under *Cal. Civ. Code* §1670.5 (a) "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the

1   unconscionable clause, or it may so limit the application of any unconscionable clause as

2   to avoid any unconscionable result."

3   46. An unconscionable contract is one that is unjust or extremely one-sided in favor of the

4       person who has the superior bargaining power. Unconscionable contracts usually result

5       from the exploitation of consumers who are often poorly educated, impoverished, and

6       unable to find the best price available in the competitive marketplace.

7   47. In this case, Plaintiffs perfectly fit the bill of exploited consumers. The agreements were

8       on West's contract forms, and the MODIFICATION OFFER was prepared by Global.

9       Defendants used their superior bargaining power to exploit Plaintiffs, especially in light

10      of the fact that they were aware of Plaintiffs' dire financial circumstances and lack of

11      knowledge in regards to loan agreements, in order to induce them into agreeing to their

12      terms.

13  48. The two Agreements were unjust and extremely one-side in favor of the Defendants

14      considering that they charged on interest rate of roughly 26% and 28% respectively,

15      which violated California's usury laws, and they also required daily payments of nearly

16      $2,000 per loan.

17  49. Furthermore, the MODIFICATION OFFER lowered the daily payments for only 10 days

18      and required a fee of $4702.03 and $4,295.44 respectively, in order to be accepted.

19  50. As such, Plaintiffs were clearly being exploited by corporations that had superior

20      bargaining power.

21  51. Plaintiffs are entitled to have the merchant agreements be deemed unenforceable, or

22      rescinded.

23  52. Plaintiffs are entitled at the very least to have merchant agreements modified to a 10%

24      interest rate.

25  53. Plaintiffs have incurred, and will continue to incur, attorney's fees and costs in this

26      litigation. Plaintiffs, if successful in this action, are entitled to recover such fees and costs

27      from Defendants.

28

LA LAW, Inc.
F. Badi Nejadpour, Esq.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, California 90211

**As to the 1st cause of action Only PLAINTIFF "JACK SHEMTOV" against ALL DEFENDANTS and DOES 1 to 10 Inclusive for FINANCIAL ELDER ABUSE:**

1. For general damages according to proof at time of trial;

2. For exemplary or punitive damages;

3. For a modification of both merchant agreements to a maximum interest rate of 10%;

4. For a rescission of both merchant agreements;

5. For attorneys' fees and costs according to proof;

6. For interest as allowed by law; and

7. For cost of suit herein.

**As to the 2nd cause of action ALL PLAINTIFFS against ALL DEFENDANTS and DOES 1 to 10 Inclusive for USURY LAWS:**

1. For a modification of both merchant agreements to a maximum interest rate of 10%;

2. For a rescission of both merchant agreements;

3. For attorney's fees and costs according to proof;

4. For interest as allowed by law; and

5. For costs of suit herein.

**As to the 3rd cause of action ALL PLAINTIFFS against ALL DEFENDANTS and DOES 1 to 10 Inclusive for UNCONSCIONABLE CONTRACT:**

1. For the merchant agreements to be deemed unenforceable;

2. For a rescission of both merchant agreements;

3. For a modification of both merchant agreements to a maximum interest rate of 10%;

4. For attorney's fees and costs according to proof;

5. For interest as allowed by law; and

6. For costs of suit herein.

Date: October 2 6 , 2017

RESPECTFULLY SUBMITTED
L.A. LAW, INC.

F. BARI NEJADPOUR ESQ.
*Attorney for Plaintiffs:*
*Jack Shemtov, Simon Yafadonay,*
*and Socaldeal Inc.*

L.A. LAW, Inc.
F. Bari Nejadpour, Esq.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, California 90211

## VERIFICATION

I am a party to this action. The matters state in the document described above are true to my own knowledge and belief except for those matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____ *17* _____ day of October, 2017 at _____ *LOS ANGELES* _____, California.

_____
Jack Shemtov



LA LAW, Inc.
F. Bari Nejadpour, Esq.
8383 Wilshire Boulevard, Suite 649
Beverly Hills, California 90211

MARY JOHNS MALLISON
Commission # 2086972
Notary Public • California
Los Angeles County
My Comm. Expires Nov 19, 2018

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _Los Angeles_

On _10-17-2017_ before me, _Mary Johns Mallison_
(insert name and title of the officer)

personally appeared _Jack Shamtov_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.



MARY JOHNS MALLISON
Commission # 2086972
Notary Public - California
Los Angeles County
My Comm. Expires Nov 19, 2018

Signature _Mary Johns Mallison_ **(Seal)**

Attachment to 'Verification' for Complaint
for Modification, Recission and Demand for Jury Trial'

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"



**1 WEST CAPITAL LLC**
**1250 East Hallandale Beach Blvd., Suite 409**
**Hallandale Beach, FL 33009**
**Phone: (954) 248-1268**
**Loans made or arranged pursuant to a California Finance Lenders Law license # 60DBO-35888**

### ACH MERCHANT AGREEMENT

☒ Business or Commercial Purposes

PURCHASE PRICE: 250.000.00

PURCHASED AMOUNT: 315.000.00

DAILY AMOUNT 1,789.77

FIRST PAYMENT: 0.00

(*"PERIODIC AMOUNT"*)

☐ *(Due 15 days after Effective Date if Purchase Price less than $10,000)*

This ACH Merchant Agreement, dated as of ___February___ 16 , 20 17 (the "*Effective Date*") including all Annexes, Schedules and Exhibits hereto, ("*Agreement*"), is made by and between (i) 1 WEST CAPITAL LLC, a limited liability company, ("*Provider*") and (ii) the merchant party hereto identified below ("*Merchant*" and, together with Provider, the "*Parties*"):

**Merchant's Legal Name:** Socaldeal Inc

**DBA (if any):** Toda Tech

**Type of Business Entity:** ☑ Corporation ☐ Limited Liability Company ☐ Limited Liability Partnership ☐ Partnership ☐ Limited Partnership ☐ Sole Proprietorship ☐ Other:

**Business Street Address for Service:** 10758 Washington Blvd

**City:** Culver City       **State:** California       **Zip:** 90232

**Federal Tax ID #:** 27-2034239       **State of Incorporation:** California

**Mailing/Notice Address (if different):** _____

**Website:** www.socaldeal.com       **Email:** _____       **Business Phone:** _____

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

Provider hereby purchases from Merchant and Merchant hereby sells to Provider, for the price specified above (the "*Purchase Price*"), the amount specified above ("*Purchased Amount*"). Merchant shall pay the entire Purchased Amount to Provider in ☐ DAILY ☐ WEEKLY ("*Periodic*") payments equal to the amount specified above ("*Periodic Amount*") until such time as Provider has received payment in full for the entire Purchased Amount and all other Obligations owing under this Agreement, which period has been estimated below by dividing the Purchased Amount by the Periodic Amount. Merchant hereby irrevocably authorizes the Periodic Amount to be paid and transferred from Merchant's bank accounts via automated clearing house ("*ACH*") to Provider's bank account(s). In the event that there are insufficient cash/receivables during any Periodic period for Merchant to remit any portion of the Periodic Amount or other Obligations, ("*NSF*") then such unpaid Periodic Amount or other Obligation shall be due and payable with the next Periodic payment.

If the Purchase Price is less than $10,000, Merchant shall make the first payment 15 days after the Effective Date; otherwise, the first payment shall be due on the Effective Date ("*First Payment*"), and then the subsequent Periodic Amount(s) as stated above. In the event aggregate Periodic Amount(s) remitted pursuant to this Agreement fall below the Periodic Amount(s) specified above for one week, the aggregate shortfall, together with all Periodic shortfalls going forward, may, in Provider's sole discretion, be paid by Merchant to Provider through Merchant's Processor as stated above, until all Obligations are paid in full, and Merchant hereby irrevocably authorizes the same.

NOTICE: SEE OTHER PAGES FOR IMPORTANT INFORMATION. THE ADDITIONAL TERMS AND CONDITIONS ON THE ACCOMPANYING PAGES ARE A PART OF THIS AGREEMENT. PLEASE READ THIS ENTIRE AGREEMENT CAREFULLY.

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant: _____       1 WEST CAPITAL LLC Agreement # FG170209006

1 of 14

MERCHANT REPRESENTED TO PROVIDER THAT, (A) THE PURCHASE PRICE, AND ANY PORTION THEREOF, WILL BE USED BY MERCHANT FOR MERCHANT'S BUSINESS OPERATIONS; (B) ALL BANK AND OTHER ACCOUNTS USED BY MERCHANT TO TRANSFER MONEY ELECTRONICALLY TO PROVIDER, PURSUANT TO THIS AGREEMENT, HAVE BEEN/WILL BE USED BY MERCHANT FOR MERCHANT'S BUSINESS OR COMMERCIAL PURPOSES ONLY; (C) AND BASED UPON MERCHANTS CALCULATIONS AND EXPERIENCE IN OPERATING ITS BUSINESS, MERCHANT IS CONFIDENT THAT THE PURCHASE PRICE PAID BY 1 WEST CAPITAL LLC IN EXCHANGE FOR THE PURCHASED AMOUNT WILL BE USED IN A MANNER THAT WILL BENEFIT MERCHANT'S CURRENT AND FUTURE BUSINESS OPERATIONS

THE TERMS AND CONDITIONS AND OTHER SCHEDULES, EXHIBITS, AND ANNEXES ATTACHED HERETO AND THERETO FORM A BINDING PART OF THIS AGREEMENT AND ARE HEREBY INCORPORATED PART BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed and delivered as of the date first above written.

| "MERCHANT" | "PROVIDER" |
|---|---|
| (Merchant's Name) | 1 WEST CAPITAL LLC |
| By: Simon Yaftaeloney / Jack Shemtov | By: _____ |
| Name: Owner / Owner | Name: _____ |
| Title: | Title: _____ |

## GUARANTY

**Personal Guaranty of Performance.** Provider is purchasing the Purchased Amount knowing the risks that Merchant's business may slow down or fail, and Provider assumes these risks based on Merchant's representations, warranties and covenants in the Agreement, (as defined above) which are designed to give Provider a reasonable and fair opportunity to receive the benefit of its bargain. The undersigned Guarantor(s) hereby unconditionally guarantees to Provider, Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in the Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor(s)' obligations are due at the time of any Event of Default under the Agreement.

**Guarantor(s) Waivers.** In the Event of Default, Provider may seek recovery from Guarantor for all of Provider's losses and damages by enforcement of Provider's rights under this Guaranty without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or additional collateral Provider may hold pursuant to the Agreement, or any other guaranty.

Provider does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under the Agreement and this Guaranty if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) Provider's acceptance of the Agreement; and (v) any renewal, extension or other modification of the Agreement or Merchant's other obligations to Provider. In addition, Provider may take any of the following actions without releasing Guarantor from any of its obligations under the Agreement and this Guaranty: (i) renew, extend or otherwise modify the Agreement or Merchant's other obligations to Provider; (ii) release Merchant from its obligations to Provider; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under the Agreement or this Guaranty. Until the Purchased Amount and Merchant's other obligations to Provider under the Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under the Agreement or this Guaranty. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or

NOTICE: SEE OTHER PAGES FOR IMPORTANT INFORMATION. THE ADDITIONAL TERMS AND CONDITIONS ON THE ACCOMPANYING PAGES ARE A PART OF THIS AGREEMENT. PLEASE READ THIS ENTIRE AGREEMENT CAREFULLY.

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant: _____          1 WEST CAPITAL LLC Agreement # FG170209006

any other guarantor, for any amounts paid by it, or acts performed by it, under the Agreement or this Guaranty: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that Provider must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under the Agreement and this Guaranty shall include that amount.

**Guarantor(s) Acknowledgement.** Guarantor(s) acknowledge(s) that: (i) He / She understands the seriousness of the provisions of the Agreement, including the schedules, exhibits, and annexes, the Jury Trial Waiver and Arbitration sections, the Security, and this Guaranty; (ii) He / She has had a full opportunity to consult with counsel of his/her choice; and (iii) He / She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under the Agreement and this Guaranty are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE AGREEMENT (AS DEFINED ABOVE) ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE AGREEMENT.

X _____     X _____
Guarantor                                                Guarantor

Simon Yaffaelonay                          Jack Shemtov
Print Name                                              Print Name

10758 Washington Blvd                   10758 Washington Blvd
Address                                                  Address

Culver city CA 90232                      Culver city, CA 90232
Address                                                  Address

"MERCHANT"                                     "PROVIDER"

_____        I WEST CAPITAL LLC
(Merchant's Name)

By: Simon Yaffaelonay / Jack Shemtov    By: _____
Name: Owner / owner                        Name: _____
Title:                                                 Title: _____

NOTICE: SEE OTHER PAGES FOR IMPORTANT INFORMATION. THE ADDITIONAL TERMS AND CONDITIONS ON THE ACCOMPANYING PAGES ARE A PART OF THIS AGREEMENT. PLEASE READ THIS ENTIRE AGREEMENT CAREFULLY. READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant: _____     I WEST CAPITAL LLC Agreement # FGI70209006

3 of 14

J.S.

## ANNEX I
## OTHER TERMS AND DISCLOSURES

**I. GENERAL**

**A. EFFECTIVE DATE AND TERMINATION.** This Agreement shall be effective upon the date first above written (the "*Effective Date*"). Subject to the other provisions hereof, this Agreement shall terminate on the date that the entire Purchased Amount and all other obligations owing to Provider hereunder (collectively, "*Obligations*") are paid or performed in full;

**B. DEFINITIONS AND INTERPRETATION.** Capitalized terms used in this Agreement and defined herein shall have the meanings ascribed herein. All other terms used but not defined herein shall have the meaning given to such terms, if applicable, in the Uniform Commercial Code from time to time in effect in the State of California (the "*UCC*"). Section headings are for ease of reference only. Any ambiguities in this Agreement shall not be construed strictly against the drafter of the language concerned, but shall be resolved by applying the most reasonable interpretation under the circumstances, giving full consideration to the intentions of the parties at the time of contracting. This Agreement shall not be construed against any party by reason of its preparation. If any portion of this Agreement is held unenforceable, the remainder of this Agreement shall continue in force.

**C. PAYMENT TO MERCHANT.** Provider shall remit an amount equal to the applicable Purchase Price to Merchant in any payment form elected by Provider, including without limitation, cash, check, or wire transfer. Merchant represents and warrants to Provider that any Information provided relating to any address or account(s) for payment is and shall be true, correct and complete. Payments shall be deemed received by Merchant and duly made when sent by Provider. Provider bears no liability with respect to remitted funds that do not reach Merchant.

**D. PAYMENTS TO PROVIDER.** The Purchased Amount and all other Obligations due and payable by Merchant shall be paid by Merchant to Provider in the manner stated above until the entire Purchased Amount and all Obligations owing Provider are paid to Provider in full. Notwithstanding the foregoing, upon demand by Provider, any or all outstanding Obligations due and payable shall be paid in cash by Merchant directly to Provider. Merchant shall make all payments required hereunder not later than 5:00 p.m. on the date such payment is due in same day funds in U.S. Dollars to Provider at Provider's address listed above or such other address or account as Provider may from time to time designate in writing. Payments by Merchant shall be deemed made when actually received by Provider. Merchant bears sole responsibility with respect to funds that do not reach Provider.

**E. EVIDENCE OF PAYMENTS.** All payments made pursuant to this Agreement and the other instruments, agreements and other documents executed in connection with this Agreement (collectively, together with this Agreement, "*Agreement Documents*") shall be conclusively evidenced by Provider's own accounts and records wherever and whenever made.

**II. MERCHANT'S REPRESENTATIONS AND WARRANTIES; CERTAIN COVENANTS.** Merchant hereby represents, warrants and covenants to Provider as follows as of the Effective Date and on the date of each subsequent transaction between Merchant and Provider (if any):

**A. INFORMATION.** All information provided by or on behalf of Merchant to Provider in connection with this Agreement, the other Agreement Documents and the transactions contemplated hereby and thereby (collectively, "*Transactions*") both prior to an after the Effective Date (collectively, "*Information*") is true, correct and complete in all respects. Merchant shall immediately furnish Provider (i) any additional information needed to maintain the truth, accuracy and completeness of all Information and (ii) such additional Information as Provider may from time to time reasonably request. All financial statements and other Information Merchant submits to Provider fairly, accurately, truly and completely present the financial condition of Merchant as at the date such statements and other Information were provided, were/are prepared in accordance with GAAP and were/are in agreement with Merchant's books, records and accounts. Provider may use Information for commercial purposes and makes no representation, warranty or agreement regarding the security of Information.

**B. EXISTENCE; COMPLIANCE WITH LAWS.** If a corporation, limited liability company or partnership, Merchant (i) is a corporation/limited liability company/partnership duly organized or formed, validly existing and in good standing under the Applicable Laws of the state of its organization or formation. Merchant possesses, is in compliance with and shall maintain all permits, licenses, approvals, consents and other authorizations necessary or advisable for Merchant to conduct its business as conducted on the Effective Date ("*Business*"), to execute and deliver this Agreement and the other Agreement Documents, and to perform its Obligations under this Agreement and consummate the Transactions. Merchant is in compliance with all applicable federal, state and local laws, regulations and orders ("*Applicable Laws*"), all agreements to which Merchant is a party, and, if applicable, all bylaws, articles of incorporation and/or other organizational documents of Merchant.

**C. DUE AUTHORIZATION; ENFORCEABILITY; NON-CONTRAVENTION.** The execution, delivery and performance of this Agreement, Agreement Documents and consummation of the Transactions by Merchant have been duly authorized by all necessary action, and this Agreement and the other Agreement Documents, when executed, will be legal, valid and binding obligation of Merchant, enforceable against Merchant in accordance with their terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally. The undersigned is an authorized officer of Merchant vested with the power and authority to obligate Merchant under this Agreement and the other Agreement Documents. The execution, delivery and performance of this Agreement and the other Agreement Documents is not in contravention of Applicable Law or of the terms of Merchant's organizational documents and

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant:

34 of 14

I WEST CAPITAL LLC

Agreement # FG170209006

## TERMS AND CONDITIONS
### (CONTINUED)

will not result in the breach of or constitute a default under, or result in the creation of a lien or require a payment to be made under any agreement/undertaking to which Merchant is a party or by which it or its property may be bound or affected.

D.  LANGUAGE, ADVICE AND COUNSEL.  Merchant understands English and, to the extent any aspect of this Agreement or any other Agreement Document was unclear to Merchant, Merchant has been advised to seek an interpreter or other counsel (e.g., legal or financial) and Merchant has done so to Merchant's satisfaction. Merchant has read, understood and agreed with each and every term and condition of this Agreement and the other Agreement Documents.  Merchant is engaged in commerce for profit, aware of other financing options, is over the age of 18 and is not executing this Agreement under duress or mistake.  Merchant shall execute and deliver the acknowledgement attached as Exhibit B hereto.

E.  OWNERSHIP OF PROPERTY; NO LIENS; MAINTENANCE. Merchant has and at all times will maintain good title to, rights in, and the power to transfer the payments, accounts, future receivables  and other Collateral contemplated by this Agreement and the other Agreement Documents. Such property/assets are and will remain unencumbered by any lien or encumbrance. Merchant may grant a lien or encumbrance on such property/assets without the consent of any third party. Merchant owns its business premises and/or occupies its business premises pursuant to valid and enforceable leases or subleases, true, correct and complete copy of which have been furnished to Provider. If Merchant leases any premises or other property/assets, Merchant shall not breach any such lease in any respect.  If Merchant owns any premises or other property/assets, Merchant shall comply with all applicable laws and shall pay all taxes, duties and assessments in connection therewith and shall reasonably maintain such property.

F. SOLVENCY.  Both before and after giving effect to this Agreement, the consummation of any Transaction and use of the proceeds thereof: (i) Merchant is, will be and shall be "solvent" within the meaning of all applicable law, (ii) Merchant is, will be and shall not be left with unreasonably small capital, (iii) Merchant is, will be and shall be able to pay its debts and other obligations as they mature and (iv) Merchant's assets are, will be and shall be substantially greater than its liabilities.

G. MATERIAL ADVERSE CHANGE. There has been no material adverse change in Merchant's financial condition or business prospects.

H.  ACCOUNTS.  Each of Merchant's bank account are truly and completely disclosed on Schedule A hereto and Merchant shall immediately inform Provider in writing of any new such accounts. Merchant shall continue to use and exclusively use the same account(s) until the Purchased Amount is fully paid to Provider.

III. OTHER COVENANTS.  Merchant hereby covenants and agrees with Provider as follows:

A.  NO OTHER ENCUMBRANCES, RECEIVABLES FINANCINGS.  Merchant shall not enter into any sale, financing, agreement, commitment or other arrangement that is secured by, Transfers, relates to or otherwise involves Merchant's income or future receivables with any person or entity other than Provider.  Merchant shall not create, incur, or allow any lien or other encumbrance to exist on any of its future receivables  other than those created by this Agreement and the other Agreement documents.

B.  FURTHER ASSURANCES. Merchant shall execute an Authorization substantially in the form of Exhibit A or otherwise as requested by Provider for each account requested by Provider and shall execute any further documents and instruments and take further action as Provider reasonably requests to perfect or continue all of Provider's interests in Merchant's property and assets, future receivables  or other Collateral (including any lien or encumbrance), realize upon such items or to otherwise effect the purposes of this Agreement and the other Agreement Documents.

C.  ACCOUNTING RECORDS, AND PLACE OF BUSINESS. Provider or its designated representatives and agents shall have the right during Merchant's normal business hours and at any other reasonable time to examine the interior and exterior of any of Merchant's places of business. Provider may examine, among other things, whether Merchant (a) has a place of business that is
separate from any personal residence, (b) is open for business, and (c) has sufficient inventory to conduct Merchant's business. When performing an examination, Provider may photograph the interior and exterior of any of Merchant's places of business, including any signage, and may photograph any Owner. Provider or any of its agents shall have the right to inspect, audit, check, and make extracts from any copies of the books, records, journals, orders, receipts, correspondence that relate to Merchant's accounts or other transactions between the parties thereto and the general financial condition of Merchant and Provider may remove any of such records temporarily for the purpose of having copies made thereof. Provider shall have the right to hire a Certified Public Accountant, licensed in the state where the business is located to perform analysis of the accounting records for the purpose of determining if the Periodic Amounts(s) have been made available for remittance to Provider. Merchant hereby agrees to fully cooperate with such analysis upon the request of Provider.

D.  Change of Name or Location or Sale of Business. Merchant will not conduct Merchant's businesses under any name other than as disclosed to Provider, nor will Merchant change any of its places of business without prior written consent by Provider. Merchant will not sell, dispose, transfer or otherwise convey its business or assets without (i) the express prior written consent of Provider, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to Provider.

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant: _____

5 of 14

1 WEST CAPITAL LLC

Agreement # FG170209006

## TERMS AND CONDITIONS
### (CONTINUED)

E.  **Estoppel Certificate.** Merchant will at all times, and from time to time, upon at least 1 day's prior notice from Provider to Merchant, execute, acknowledge and deliver to Provider and/or to any other person, firm or corporation specified by Provider, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been delivered to Provider.

## IV. ADDITIONAL TERMS.

A.  GRANT OF SECURITY. Merchant hereby grants Provider, to secure the prompt payment in full of the Purchased Amount and prompt payment and performance in full of all other Obligations, a continuing security interest in (subject only to the security interests of applicable credit card processors), and pledges to Provider, all of Merchant's assets, including but not limited to, all now owned or hereafter acquired or arising accounts, inventory, machinery, furniture, fixtures, equipment, general intangibles, chattel paper, contract rights, documents, instrument, deposit accounts and investment property; and all cash and non-cash proceeds thereof (including, without limitation, insurance proceeds) and proceeds of proceeds, all cash, future receivables and other accounts, rights of payment, and contractual rights, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (collectively, the "*Collateral*"). Regardless of whether this Agreement is terminated, Provider's Lien in the Collateral shall continue until the Purchased Amount is paid in full and all other Obligations (other than inchoate indemnity obligations) are repaid in full or otherwise performed. Upon such complete payment and performance, Provider shall, at Merchant's sole cost and expense, release its liens in the Collateral and all rights therein shall revert to Merchant. Provider shall not be liable in any respect for any losses or other damages associated with the handling, care, use or maintenance of any Collateral.

B.  FINANCING STATEMENTS AND FILINGS. Merchant hereby authorizes Provider to file financing statements and make and execute all other filings, agreements and documents Provider deems appropriate, without notice to Merchant, with all appropriate jurisdictions to perfect or protect Provider's interest and rights hereunder. Merchant agrees that Provider will file financing statements naming third party vendor(s) to be retained by Merchant to be named in the financing statement(s) and act as a representative of Merchant as the secured party. Such financing statements may describe the Collateral as determined by Provider in Provider's sole discretion, including without limitation "all of Debtor's assets, including but not limited to, all now owned or hereafter acquired or arising accounts, inventory, machinery, furniture, fixtures, equipment, general intangibles, chattel paper, contract rights, documents, instrument, deposit accounts and investment property; and all cash and non-cash proceeds thereof (including, without limitation, insurance proceeds) and proceeds of proceeds, all cash, future receivables and other accounts, rights of payment, and contractual rights, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof"

## V. EVENTS OF DEFAULT AND REMEDIES.

A.  EVENTS OF DEFAULT. Any one of the following shall constitute an event of default (an "Event of Default") under this Agreement:

1.  **Payment Default.** Merchant fails to (a) make any Periodic Payment or other payment of Obligations on its due date, or (b) pay any other Obligations within three (3) Business Days after such Obligations are due and payable;

2.  **Covenant and Other Provision Default.** Merchant (i) fails or neglects to perform any obligation in Sections I, II, III or IV or (ii) Merchant fails or neglects to perform, keep or observe any other term, provision, condition, covenant or agreement contained in this Agreement or any other Agreement Document and has failed to cure such default within ten (10) days after the occurrence thereof;

3.  **Material Adverse Change.** Any material adverse change in Merchant's financial condition or business prospects occurs;

4.  **Attachment.** Unless stayed or a bond satisfactory to Provider is posted pending contest by Merchant: (i) any material portion of Merchants property, Future receivables or other assets of Merchant is attached, seized, levied on, or comes into possession of a trustee or receiver and the attachment, seizure or levy is not removed in ten (10) days; (ii) the service of process seeking to attach, e.g., by trustee, funds or other assets of Merchant; (iii) Merchant is restrained or prevented by court order from conducting its Business; (iv) a judgment or other claim in excess of $10,000 becomes a lien on any of Merchant's assets; or (v) a notice of lien, levy, or assessment is filed against any of Merchant's assets by any government agency and not paid within ten (10) days after Merchant receives notice;

5.  **Insolvency.** (a) Merchant is unable to pay its debts and other monetary obligations as they become due or otherwise becomes insolvent; (b) Merchant begins an insolvency proceeding; or (c) an insolvency proceeding is begun against Merchant and is not dismissed or stayed within 30 days;

6.  **Representations and Warranties.** Merchant or any person or entity acting for Merchant makes any representation, warranty, or other statement now or later during the term of this Agreement, in any other Agreement Document or in any other Information delivered to Provider, and such representation, warranty, or other statement is incorrect in any material respect when made;

7.  **Reduction in Value of Collateral.** Merchant performs any act that reduces or fails to perform any act to maintain the value of any Collateral.

8.  **Cross Default.** Merchant defaults under any of the terms, covenants and conditions of any other agreement with provider; or

B.  REMEDIES. While an Event of Default occurs and continues Provider may do any or all of the following:

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant: _____

6 of 14

1 WEST CAPITAL LLC

Agreement # FG170209006

## TERMS AND CONDITIONS
### (CONTINUED)

1. **Protection of Collateral.** Make any payments and do any acts it considers necessary or reasonable to protect the Collateral and/or its security interest in the Collateral. Merchant shall assemble the Collateral at Merchant's expense if Provider requests and make it available as requested.

2. **Settlement of Accounts.** Settle or adjust accounts, disputes and claims directly with account debtors for amounts on terms and in any order that Provider considers advisable.

3. **Rights and Remedies.** Exercise, protect and enforce all rights and remedies available to Provider under the Agreement or other Agreement Documents or at law or equity, including all remedies provided under the UCC (including disposal of the Collateral pursuant to the terms thereof). All rights, powers and remedies of Provider in connection with this Agreement are cumulative and are not exclusive and are in addition to any other rights, powers or remedies provided by law or equity. Provider shall be entitled to reimbursement by Merchant of all costs, expenses and fees (including legal fees) incurred in connection with any such enforcement.

4. **Book and Records.** Demand and receive possession of all Merchant's books and records.

5. **Indemnification.** Merchant shall indemnify, defend and hold Provider harmless from and against all liabilities, losses, suits, actions, costs or expenses, including but not limited to court costs and attorney's fees, that Merchant may suffer, incur or sustain related to (i) a breach by Merchant of its representations, warranties, covenants or agreements set forth in this Agreement and the other Agreements Documents, or (ii) the enforcement of Provider's remedies set forth above.

6. Provider may enforce the provisions of the Personal Guaranty of Performance against the Guarantor(s).

7. Provider may debit Merchant's depository account(s) wherever situated by means of ACH debit or facsimile Signature on a computer-generated check drawn on Merchant's bank account(s) or otherwise for all sums due to Provider.

C. **APPLICATION OF PAYMENTS AND PROCEEDS.** For purposes of this Section, the Purchased Price shall be treated as a principal amount (the "*Principal*"), and the Purchased Amount minus the Purchase Price shall be treated as interest (the "*Interest*"). Unless an Event of Default has occurred and is continuing, Provider shall apply any funds in its possession, whether from Merchant account balances, payments, or proceeds realized as the result of any collection of accounts or other disposition of the Collateral; *first*, to Provider's fees, costs and expenses reimbursable or otherwise payable by Merchant hereunder, including without limitation, the reasonable costs, expenses, liabilities, obligations and attorneys' fees incurred by Provider in the exercise of its rights under this Agreement; *second*, to the Principal ; *third*, to the Interest; *fourth*, to interest due upon any of the Obligations; and *fifth*, to the remaining Obligations and any applicable fees and other charges, in such order as Provider shall determine in its sole discretion. Any surplus shall be paid to Merchant or other persons legally entitled thereto; Merchant shall remain liable to Provider for any deficiency. If an Event of Default has occurred and is continuing, Provider may apply any funds in its possession, whether from Merchant account balances, payments, proceeds realized as the result of any collection of accounts or other disposition of the Collateral, or otherwise, to the Obligations in such order as Provider shall determine in its sole discretion. Any surplus shall be paid to Merchant or other Persons legally entitled thereto; Merchant shall remain liable to Provider for any deficiency.

D **LIABILITY FOR COLLATERAL.** So long as Provider does not act grossly negligently or in bad faith with respect to realizing upon, transferring or handling the Collateral, under no circumstances shall Provider be responsible or liable for: (a) the safekeeping of the Collateral; (b) any loss or damage to the Collateral; (c) any diminution in the value of the Collateral; or (d) any act or default of any Account Debtor, other obligor, carrier, warehouseman, bailee, or other Person. Merchant bears all risk of loss, damage or destruction of the Collateral.

E. **NO WAIVER.** Provider's failure, at any time or times, to require strict performance by Merchant of any provision of this Agreement or any other Agreement Document shall not waive, affect, or diminish any right of Provider thereafter to demand strict performance and compliance herewith or therewith. No waiver hereunder shall be effective unless in writing and signed by Provider and then is only effective for the specific instance and purpose for which it is given. Provider's exercise of one right or remedy is not an election, and Provider's waiver of any Event of Default is not a continuing waiver. Provider's delay in exercising any remedy is not a waiver, election, or acquiescence.

F **DEMAND WAIVER.** Merchant waives demand, notice of default or dishonor, notice of payment and nonpayment, notice of any default, nonpayment at maturity, release, compromise, settlement, extension, or renewal of accounts, documents, instruments, chattel paper, and guarantees held by Provider on which Merchant is liable

## VI. MISCELLANEOUS

A. **NOTICES.** All notices, consents, requests, approvals, demands, or other communications (collectively, "Communications") by any Party must be in writing and delivered to the applicable Party at the address herein indicated or otherwise as indicated in writing by such Party.

B. **CHOICE OF LAW; JURISDICTION; VENUE; NO JURY TRIAL.** California law governs the Agreement Documents without regard to principles of conflicts of law. Merchant and Provider each submit to the exclusive jurisdiction of the State and Federal courts in Los Angeles County, California; provided, however, that nothing in this Agreement shall be deemed to operate to preclude Provider from

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant: _____

1 WEST CAPITAL LLC

Agreement # FG170209006

7 of 14

J.S.

## TERMS AND CONDITIONS
### (CONTINUED)

bringing suit or taking other legal action in any other jurisdiction to realize on the Collateral or any other security for the Obligations, or to enforce a judgment or other court order in favor of Provider. Merchant expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and Merchant hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue, or forum non conveniens and hereby consents to the granting of such legal or equitable relief as is deemed appropriate by such court. Merchant hereby waives personal service of the summons, complaints, and other process issued in such action or suit and agrees that service of such summons, complaints, and other process may be made by registered or certified mail addressed to Merchant at the address set forth at the end of this Agreement and that service so made shall be deemed completed upon the earlier to occur of Merchant's actual receipt thereof or three (3) days after deposit in the U.S. mails, proper postage prepaid. This Agreement is made pursuant to the laws of the state of California and Florida. This Agreement is not subject to Florida or California's usury limit, Cal. Const. art. XV, Section 1. If the Total Loan Amount is a bona fide principal amount of more than $2,500, this loan is not subject to the rate limitations in the California Finance Lenders Law. This Agreement is made pursuant to the California Finance Lenders Law, Division 9 (commencing with Section 22000) of the Financial Code. MERCHANT AND PROVIDER EACH WAIVE THEIR RIGHT TO A JURY TRIAL OF ANY DISPUTE, CLAIM, CONTROVERSY OR CAUSE OF ACTION RELATED TO, ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE AGREEMENT DOCUMENTS OR ANY TRANSACTION (COLLECTIVELY, "CLAIMS"). THIS WAIVER IS A MATERIAL INDUCEMENT FOR BOTH PARTIES TO ENTER INTO THIS AGREEMENT. EACH PARTY HAS REVIEWED THIS WAIVER.

**C.  ARBITRATION; NO CLASS ACTION.**  WITHOUT INTENDING IN ANY WAY TO LIMIT THE PARTIES' AGREEMENT TO LIMIT THEIR RESPECTIVE WAIVERS OF A JURY TRIAL, MERCHANT AND PROVIDER EACH (I) AGREE TO SUBMIT ANY CLAIM TO ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION IN ACCORDANCE WITH ITS THEN EFFECTIVE COMMERCIAL ARBITRATION RULES TO BE ADMINISTERED IN LOS ANGELES COUNTY AND (II) WAIVE THEIR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT (INCLUDING AS A REPRESENTATIVE OR MEMBER), IN EACH CASE WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE AGREEMENT DOCUMENTS OR ANY TRANSACTION. MERCHANT AND PROVIDER AGREE TO ARBITRATE AND DISPUTE ARISING HEREUNDER. THIS WAIVER AND AGREEMENT IS A MATERIAL INDUCEMENT FOR BOTH PARTIES TO ENTER INTO THIS AGREEMENT. EACH PARTY HAS REVIEWED THIS WAIVER AND AGREEMENT.

**D.  LIMITATION OF DAMAGES.**  MERCHANT'S REMEDIES AS A RESULT OF ANY CLAIM SHALL BE LIMITED TO ACTUAL MONETARY DAMAGES INCURRED BY MERCHANT AND MERCHANT SHALL NOT BE ENTITLES TO PUNITIVE DAMAGES OR LOST PROFITS.

**E.  SUCCESSORS AND ASSIGNS.**  This Agreement binds and is for the benefit of the successors and permitted assigns of each party. Merchant may not assign this Agreement or any rights or obligations under it without Provider's prior written consent.  Provider has the right, without the consent of or notice to Merchant, to sell, transfer, or assign all or any part of, or any interest in, Provider's obligations, rights, and benefits under this Agreement and the other Agreement Documents.

**F.  INDEMNIFICATION.**  Without limiting any other obligation herein, Merchant agrees to indemnify, defend and hold Provider and its agents, managers, officers, directors, attorneys or any other Person affiliated with or representing Provider harmless against: (a) all Claims asserted by any other party in connection with the transactions contemplated by the Agreement Documents; and (b) all fees, costs, expenses, losses or damages incurred, or paid by Provider from, following, or arising from transactions between Provider and Merchant (including attorneys' fees and expenses), except for Claims and/or losses directly caused by Provider's gross negligence or willful misconduct.

**G.  TIME OF THE ESSENCE.**  Time is of the essence for the performance of all Obligations and other obligations, acts, issuances, etc. in this Agreement and each other Agreement Documents.

**H.  SEVERABILITY.**  Each provision of this Agreement is severable from every other provision.

**I.  AMENDMENTS IN WRITING; INTEGRATION.**  All amendments to this Agreement must be in writing and signed by both Provider and Merchant. This Agreement and the other Agreement Documents represent the entire agreement about this subject matter and supersede prior negotiations or agreements. All prior agreements, understandings, representations, warranties, and negotiations between the parties about the subject matter of this Agreement and the Agreement Documents merge into this Agreement and the Agreement Documents.

**J.  COUNTERPARTS.**  This Agreement may be executed manually or via electronic signature in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. Counterparts may be delivered by facsimile or other electronic scan transmission (e.g., .pdf/email). As such, this Agreement is deemed "signed" if it includes a digital signature, symbol and/or action that is adopted or performed by either party or party's electronic agent with the present intent to authenticate or manifest assent to this Agreement.

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

I WEST CAPITAL LLC

Merchant: _____

Agreement # _____

8 of 14

**TERMS AND CONDITIONS**
**(CONTINUED)**

K.   SURVIVAL. All covenants, representations and warranties made in this Agreement continue in full force until this Agreement has terminated pursuant to its terms and all Obligations (other than inchoate indemnity obligations and any other obligations which, by their terms, are to survive the termination of this Agreement) have been satisfied. Notwithstanding anything to contrary herein, the obligations of Merchant to indemnify, defend and hold Provider harmless, Merchant's representations and warranties, choice of law, jurisdiction, venue and forum, waiver of jury trial and class action suit, agreement to arbitrate and each, and each of Provider's disclaimers and exemptions from liability shall survive until the statute of limitations with respect to all Claims related hereto shall have run.

L.   SETOFF. Merchant hereby grants to Provider a Lien and a right of setoff as security for all Obligations to Provider, whether now existing or hereafter arising upon and against all deposits, credits, Collateral and other property, now or hereafter in the possession, custody, safekeeping or control of Provider (including future receivables ). ANY AND ALL RIGHTS TO REQUIRE PROVIDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE OBLIGATIONS, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF MERCHANT, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

M.   No Liability. In no event will Provider be liable for any claims asserted by Merchant or Guarantor(s) under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantor(s) will be jointly liable for all of Provider's legal fees and expenses resulting therefrom. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against Provider or any of its affiliates relating to any (i)investigation undertaken by or on behalf of Provider as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement. Provider is not responsible and shall not be liable for any actions taken by Merchant's bank(s) which are not contemplated or authorized herein, and Merchant hereby agrees to hold Provider harmless from all actions of any of Merchant's bank(s).

N.   Confidentiality. Merchant understands and agrees that the terms and conditions of the products and services offered by Provider, including this Agreement and any other Provider documentations (collectively, "Confidential Information") are proprietary and confidential information of Provider. Accordingly unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of Provider to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses Confidential Information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles Provider to not only damages and legal fees but also to both a temporary restraining order and a preliminary injunction without bond or security.

O.   Publicity. Merchant and each of Merchant's Owners and all Guarantors hereby authorize Provider to use its, his or her name in listings of clients and in advertising and marketing materials.

P.   D/B/As. Merchant hereby acknowledges and agrees that Provider may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between Provider and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

Q.   To the extent that any provision in this Agreement is inconsistent with any statutory provision of the California Finance Lenders Law, ("CFLL") then such CFLL statutory provision shall prevail. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

NOTICE: This loan is made by I WEST CAPITAL LLC, a Florida limited liability company, located at 1250 East Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009, Phone: (954) 248-1268, License # 60DBO-35883, pursuant to the California Finance Lenders Law, Division 9 (commencing with Section 22000) of the Financial Code. By entering this Promissory Note and Security Agreement, You represent that no person has performed any act as a broker in connection with the making of this loan.

☐ Broker has participated.

THIS LOAN IS MADE BY I WEST CAPITAL LLC. UNDER ITS CALIFORNIA FINANCE LENDER'S LICENSE.  THAT LICENSE IS ADMINISTERED BY THE CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT.  FOR INFORMATION OR

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant: _____

9 of 14

I WEST CAPITAL LLC

Agreement # FG170209006 _____

## TERMS AND CONDITIONS
### (CONTINUED)

COMPLAINTS, CONTACT THE DEPARTMENT OF BUSINESS OVERSIGHT, STATE OF CALIFORNIA AT 1-866-275-2677 OR www.dbo.ca.gov.

*[End Terms and Conditions]*

PROVIDER: 1 WEST CAPITAL LLC

PURCHASE PRICE : 250,000.00

PURCHASED AMOUNT: 315,000.00

ESTIMATED DISCOUNT PERCENTAGE: *SEE ATTACHED*
*(Calculated based on payment of First Payment and Periodic Amounts)*

ESTIMATED DISCOUNT PERCENTAGE EXPRESSED AS AN ESTIMATED ANNUAL PERCENTAGE RATE: SEE ATTACHED
*(Calculated based on payment of First Payment and Periodic Amounts)*

DEFAULT INTEREST RATE: ____0____ Monthly Interest (See Appendix A)

PAYMENT FREQUENCY: [Continuous remittance] until all Obligations paid in Full

DAILY AMOUNT 1,789.77
("*PERIODIC AMOUNT*")

FIRST PAYMENT: Due 15 Days after Effective Date if Purchase Price less than $10,000; otherwise, due on Effective Date

ESTIMATED REPAYMENT PERIOD : 176 (8 Months)

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant: _____

1 WEST CAPITAL LLC

Agreement # FG170209006

10 of 14

J.S.

## SCHEDULE A
### BANK ACCOUNTS

BANK NAME: _Chase_
BANK ADDRESS: _9801 Washington Blvd_
ACCOUNT HOLDER: _____ Socaldeal
ACCOUNT NAME: ___ checking ___
ROUTING # (9 DIGITS) _322 271 627_
ACCOUNT# _978205060_

BANK NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK/ NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK/ NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

S.Y

J.S.

11 of 14

## EXHIBIT A
## AUTHORIZATION – FUNDS SETTLEMENT

This ACH Authorization – Funds Settlement, dated _____February_____ 16 , 20 17 (as amended, restated or otherwise modified from time to time, this "*Authorization*") is executed by Toda Tech ("*Merchant*") in connection with that certain ACH Merchant Agreement, dated as of _____February_____ 16 , 20 17 (as amended, restated or otherwise modified from time to time and including all Annexes, Schedules and Exhibits thereto, the "*Agreement*"), between (i) 1 WEST CAPITAL LLC, a California limited liability company ("*Provider*") and (ii) Merchant. Capitalized terms used herein and defined herein shall have the meanings ascribed herein; capitalized used herein and not defined herein shall have the meanings ascribed in the Agreement, if any.

Merchant hereby irrevocably authorizes Provider and/or its designated assignees to initiate automated clearinghouse ("*ACH*") transfer entries, wire transfers and other transfers and to consummate debits and/or credits to Merchant's bank or other account identified below (the "*Account*") for payments relating to the Agreement and any other amounts or other obligations from time to time owing by Merchant to Provider. This Authorization shall remain in effect until Provider shall have provided written notice that the Agreement has been terminated and all Obligations owing thereunder and otherwise by Merchant (other than unrealized contingent indemnification obligations) have been paid or performed in full. Merchant may not unilaterally terminate this Authorization. Among other things, this Authorization creates, evidences and perfects Provider's control over and interest in the Account. MERCHANT HEREBY WAIVES AND AGREES TO INDEMNIFY, DEFEND AND HOLD HARMLESS PROVIDER AND THE BANK/ IDENTIFIED BELOW AGAINST ALL CLAIMS, LOSSES, LIABILITIES OR DAMAGES IN ANY WAY RELATED TO ANY TRANSFER INITIATED AND/OR CONSUMMATED HEREUNDER.   THE TERMS AND CONDITIONS ATTACHED AS ANNEX I TO THE AGREEMENT ARE HEREBY INCORPORATED BY REFERENCE AS THOUGH SET FORTH HEREIN IN FULL. MERCHANT REPRESENTS, WARRANTS AND AGREES THAT, (A) MERCHANT SHALL NOT ATTEMPT TO UNILATERALLY TERMINATE THIS AUTHORIZATION, (B) THE PERSON EXECUTING THIS AUTHORIZATION IS DULY AUTHORIZED BY MERCHANT, (C) UPON EXECUTION THIS AUTHORIZATION SHALL BE A VALID AND BINDING IRREVOCABLE AUTHORIZATION ENFORCEABLE IN ACCORDANCE WITH ITS TERMS, (D) THE PERSON EXECUTING THIS AUTHORIZATION ON BEHALF OF MERCHANT IS AN AUTHORIZED SIGNATORY ON THE ACCOUNT (E) ALL INFORMATION PROVIDED REGARDING THE ACCOUNT IT TRUE, CORRECT AND COMPLETE, (F) THE PURCHASE PRICE, AND ANY PORTION THEREOF, WILL BE USED BY MERCHANT FOR MERCHANT'S BUSINESS OPERATIONS, (G) ALL BANK AND OTHER ACCOUNTS USED BY MERCHANT TO TRANSFER MONEY ELECTRONICALLY TO PROVIDER, PURSUANT TO THIS AGREEMENT, HAVE BEEN/WILL BE USED BY MERCHANT FOR MERCHANT'S BUSINESS OR COMMERCIAL PURPOSES ONLY (H) AND BASED UPON MERCHANT'S CALCULATIONS AND EXPERIENCE IN OPERATING ITS BUSINESS, MERCHANT IS CONFIDENT THAT THE PURCHASE PRICE PAID BY 1 WEST CAPITAL LLC IN EXCHANGE FOR THE PURCHASED AMOUNT WILL BE USED IN A MANNER THAT WILL BENEFIT MERCHANT'S CURRENT AND FUTURE BUSINESS OPERATIONS

### ACCOUNT

BANK NAME: _____Chase_____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____Socaldeal Inc._____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) 322-271-627_____
ACCOUNT# _____978205060_____

IN WITNESS WHEREOF, Merchant has caused this Authorization to be duly executed and delivered as of the date first above written.

| "MERCHANT" | ACKNOWLEDGED AND ACCEPTED: |
|---|---|
| [Merchant's Name] | "PROVIDER" |
| By: _____ | 1 WEST CAPITAL LLC |
| Name: Simon Yaffaeloney Uodi Shemby | By: _____ |
| Title: Owner/owner | Name: _____ |
|  | Title: _____ |

12 of 14

## EXHIBIT B
## ACKNOWLEDGEMENT

This Acknowledgment, dated _____February_____ 16 , 20 17 (this "*Acknowledgment*") is executed by Toda Tech _____ ("*Merchant*") in connection with that certain ACH Merchant Agreement, dated as of _____February_____ 16 , 20 17 (the "*Agreement*"), between (i) I WEST CAPITAL LLC, a California limited liability company ("*Provider*") and (ii) Merchant. Capitalized terms used herein and defined herein shall have the meanings ascribed herein; capitalized used herein and not defined herein shall have the meanings ascribed in the Agreement, if any.

Merchant hereby acknowledges receipt of a fully executed copy of the Agreement on the date first written above.

ACKNOWLEDGED, ACCEPTED AND AGREED:

MERCHANT:

By: _____

Name: _____Simon Yaftadonay_____

Title: _____Owner/Owner_____

## EXHIBIT C
## MERCHANT CERTIFICATION

This Certification, dated ___February 16, 20 17___ (this "*Certification*") is executed by _Toda Tech_ ("*Merchant*") in connection with that certain ACH Merchant Agreement, dated as of ___February 16, 20 17___ (as amended, restated or otherwise modified from time to time, the "*Agreement*"), between (i) I WEST CAPITAL LLC a California limited liability company ("*Provider*") and (ii) Merchant. Capitalized terms used herein and defined herein shall have the meanings ascribed herein; capitalized used herein and not defined herein shall have the meanings ascribed in the Agreement, if any.

1.    I am the duly elected, qualified and acting _____ (Insert Title) of Merchant. I am an authorized officer of Merchant vested with the power and authority to obligate Merchant under the Agreement and the other Agreement Documents.

2.    I am familiar with the day-to-day business operations of Merchant, including Merchants liabilities, profits, losses, cash flows, income and other financial results.

3.    I understand English and, to the extent any aspect of the Agreement or any other Agreement Document was unclear to me, I have been advised to seek an interpreter or other counsel (e.g., legal or financial) and I have done so to my satisfaction. I have read, understood and agreed with each and every term and condition of the Agreement and the other Agreement Documents.

4.    All Information provided by or on behalf of Merchant to Provider in connection with the Agreement, the other Agreement Documents and the Transactions, and each representation and warranty in connection therewith, is and remains true, correct and complete in all respects, except as disclosed to Provider in writing and fully corrected prior to the date hereof.

5.    If a corporation/limited liability company/partnership, Merchant is a corporation/limited liability company/partnership duly organized or formed, validly existing and in good standing under the Applicable Laws of the state of its organization or formation. Merchant possesses, is in compliance with all permits, licenses, approvals, consents and other authorizations necessary or advisable for Merchant to conduct its Business, to execute and deliver the Agreement and the other Agreement Documents, and to perform its Obligations under this Agreement and consummate the Transactions. Merchant is in compliance with all applicable federal, state and local laws, regulations and orders ("*Applicable Laws*"), all agreements to which Merchant is a party, and, if applicable, all bylaws, articles of incorporation and/or other organizational documents of Merchant.

6.    The execution, delivery and performance of the Agreement, Agreement Documents and consummation of the Transactions by Merchant have been duly authorized by all necessary action, and this Agreement and the other Agreement Documents, when executed, will be legal, valid and binding obligation of Merchant, enforceable against Merchant in accordance with their terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally. The execution, delivery and performance of the Agreement and the other Agreement Documents is not in contravention of Applicable Law or of the terms of Merchant's organizational documents and will not result in the breach of or constitute a default under, or result in the creation of a lien or require a payment to be made under any agreement/undertaking to which Merchant is a party or by which it or its property may be bound or affected.

7.    As of the date hereof, no claim, action, suit, or other proceeding or investigation is pending threatened against Merchant.

8.    As of the date hereof, there has been no material adverse change in Merchant's financial condition or business prospects.

9.    As of the date hereof, there has been no event, act or occurrence that constitutes or would constitute (given inaction and/or the passage of time) an Event of Default.

10.   The financial information provided/attached herewith is true and complete in all respects.

IN WITNESS WHEREOF, I have caused this Certification to be duly executed and delivered as of the date first above written.

By: _____
Name: _Simon Yaffelony / Jack Shemto_
Title: _Owner / owner_

14 of 14

# 1West Capital
MERCHANT FUNDING SOURCE

1250 E. Hallandale Beach Blvd.,
Suite #409
Hallandale Beach, Florida 33009
954-248-1268

## Terms of Use for Text Message (SMS)

1. Your wireless carrier's standard messaging rates apply to SMS correspondence. 1 West Capital, LLC does not charge for any content; however, downloadable content may incur additional charges from your wireless carrier. Please contact your wireless carrier for information about your messaging plan. Your carrier may impose message or charge limitations on your account that are outside of our control. All charges are billed by and payable to your wireless carrier. Merchants Initials _____

2. You represent that you are the owner, or authorized user of the wireless device you use to receive the service, and that you are authorized to approve the applicable charges. Merchants Initials _____

3. We will send you messages periodically, and only with your explicit agreement as indicated by your continuation of the process flow  Merchants Initials _____

4. We will not be liable for any delays or failures in your receipt of any SMS messages as delivery is subject to effective transmission from your network operator and processing by your mobile device. SMS message services are provided on an AS IS, AS AVAILABLE basis  Merchants Initials _____

5. Data obtained from you in connection with this SMS service may include your mobile phone number, your carrier's name, and the date, time and content of your messages and other information that you may provide. We may use this information to contact you and to provide the services you request from us, discuss your advance, current and past due payments and to otherwise operate, develop and improve the service. Your wireless carrier and other service providers may also collect data from your SMS usage, and their practices are governed by their own policies. We will only use the information you provide to the service to transmit your text message or as otherwise described in this document. Nonetheless, we reserve the right at all times to disclose any information as necessary to satisfy any law, regulation or governmental request, to avoid liability, or to protect our rights or property. When you complete forms online or otherwise provide us information in connection with the service, you agree to provide accurate, complete, and true information.  Merchants Initials _____

6. The service as well as the content and materials received through the service are proprietary to us and our licensors, and is for your personal and commercial use only. You shall not damage, impair, interfere with or disrupt the service or its functionality Merchants Initials _____

7. We reserve the right to alter charges and/or these terms and conditions from time to time. We may suspend or terminate the service to you if we believe you are in breach of our terms and conditions. Your service is also subject to termination in the event your wireless service terminates or lapses. We may discontinue the service at any time  Merchants Initials _____

8. Additionally, you agree that we may send any SMS Statement Notifications through your communication service provider in order to deliver them to you. You agree to provide a valid mobile phone number for these services. You further agree to indemnify, defend and hold us harmless from and against any and all claims, losses, liability, cost and expenses (including reasonable attorneys' fee) arising from your provision of a mobile phone number that is not your own or your violation of applicable federal, state or local law, regulation or ordinance. Your obligation under this paragraph shall survive termination of the Agreement. SMS Statement Notification is provided for your convenience only.  Merchants Initials _____

9. If you have any questions, contact 1 West Capital at 954-248-1268
We do not charge for help or info messages; however, your normal carrier rates apply   Merchants Initials _____

# 1st West Capital
### MERCHANT FUNDING SOURCE

## ACH Authorization/Bank Authorization Form
All information on this form is required unless otherwise noted.

**Business Authorized to Debit/Credit Account**

1st West Capital
_Authorized Business Name_

(305) 224 - 1490
_Authorized Business Phone Number_

1250 E hallandale Beach Blvd,Suite 409
_Authorized Business Address_

Hallandale Beach | Florida | 33009
_City_ | _ST_ | _Zip_

**Account Holder Information**

Socaldeel
_Account Holder Business Name_

310 202 6666
_Account Holder Phone Number_

10758 Washington Blvd
_Account Holder Business Address_

Culver city | CA | 90232
_City_ | _ST_ | _Zip_

JP Morgan Chase
_Bank Name_

310 837 3144
_Branch Phone number_

322 271 627
_Bank Routing Number_

978 205 060
_Account Number_

NSF in current month: _____

Current/Ending Balance: 5000

Age of the Account: 7

Overdraft Protection: ☑ Yes ☐ No

Branch Manager Name: Adam Hill   Signature: _____

**Authorization**

I, Simon Yaftaelony authorize 1 West Capital, LLC to electronically draft via the Automated Clearing House system the amount of $ 1789-77 , daily until the purchase is completed and the UCC lien is released. The Undersigned hereby certifies that they are duly authorized to execute this form on behalf of the above listed account holder. I acknowledge that I am subject to a $75 NSF fee if items are returned for insufficient funds

| in'o | Simon Yaftaelony | 2,16,2017 |
|---|---|---|
| Signature of Account Holder | Name/Title of Account Holder | Date |



**APPENDIX A: THE FEE STRUCTURE**

## One Time Fees (deducted from origination amount)

Underwriting Fee: 1% of origination amount

### Right of Offset

1. Notwithstanding any other provision of the Merchant Agreement, 1 West Capital (1WC) shall have the right to offset any amounts paid in excess of the terms of this Agreement against amounts that may be due under future agreements with 1WC, including renewal agreements.

### Other Fees

1. NSF / Returned Fee: $75.00 each
   - Fee is applied after four consecutive NSF's. This is a deemed a default of the Merchant Agreement.

2. Blocked or Rejected ACH Fee: $100.00
   - Fee is applied when the Merchant directs its banking institution to reject, block, or stop 1WC's ACH Collection Protocol. This is deemed a default of the Merchant Agreement.

3. Bank Change Fee: $50.00
   - Fee is applied when the Merchant requires or directs a change of account(s) to be debited requiring 1WC to reconfigure ACH Collection Protocol.

4. Default Fee: $2,500.00
   - Fee is applied to any breach of the merchant agreement including but not limited to modified payment arrangements (extension fees may also apply).

5. ACH Fee: $15.00
   - Next day funding

6. UCC Release Fee: $100.00

7. Extension Fee:
   - Merchant may request a payment extension not to exceed 10 days. An extension fee equal to 60% of the Daily Specified Amount shall be assessed for each day of nonpayment. 1WC reserves the right to deny Merchant's request to extend payments.

8. De-conversion Fee
   - Merchant agrees to pay the greater of: (a) one-half of the daily receivable rate multiplied by the number of remaining days of the subject agreement or (b) $5,000, whichever is greater.

Merchant's Signature _____



## ADDENDUM TO CONTRACT

## NO STACKING

This addendum is to certify that I <u>Simon Yaftoeiloy</u> of [ Socaldeal Inc ] agree and understand that while an outstanding balance with 1st West Capital LLC exists; I am prohibited from initiating a Cash Advance or Loan Product Advance with another Merchant Cash Advance company other than 1st West Capital LLC. Doing so would place me in breach of contract and _____ [ Socaldeal Inc ] will be liable for the entire amount owed to 1st west Capital LLC immediately plus attorneys' fees, costs, and liquidated damages. Liquidated damages is equal to $2,500.00 or 20% of the outstanding balance whichever is greater.

<u>**Amounts received from any subsequent merchant cash advances will be subject to collections by 1st West Capital to satisfy the outstanding account balance.**</u>

By their signatures below the parties agreed to be bound by this addendum.

| | |
|---|---|
| Name: Simon Yaftoeiloy | Name: Jack Shembv |
| Signature: | Signature: |

NO STACKING ADDENDUM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT "B"

25
26
27
28

Complaint



# 1 WEST CAPITAL LLC
## 1250 East Hallandale Beach Blvd., Suite 409
## Hallandale Beach, FL 33009
## Phone: (888) 748-4484
### Cash Advances made or arranged pursuant to a California Finance Lenders Law license # 60DBO-35888

## ACH MERCHANT AGREEMENT

☒ Business or Commercial Purposes

PURCHASE PRICE: 225,000.00          PURCHASED AMOUNT: 288,000.00

DAILY AMOUNT 1,959.18               FIRST PAYMENT: 0.00

("*PERIODIC AMOUNT*")               ☐ *(Due 15 days after Effective Date*
                                    *if Purchase Price less than $10,000)*

This ACH Merchant Agreement, dated as of _____ July _____ 12, 20 17 (the "*Effective Date*") including all Annexes, Schedules and Exhibits hereto, ("*Agreement*"), is made by and between (i) 1 WEST CAPITAL LLC, a limited liability company, ("*Provider*") and (ii) the merchant party hereto identified below ("*Merchant*" and, together with Provider, the "*Parties*"):

Merchant's Legal Name: Socaldeal INC

DBA (if any): Toda Tech

Type of Business Entity:  ☑ Corporation ☐ Limited Liability Company ☐ Limited Liability Partnership ☐ Partnership ☐ Limited Partnership ☐ Sole Proprietorship ☐ Other:

Business Street Address for Service: 10758 Washington Blvd

City: Culver City          State: California          Zip: 90232

Federal Tax ID #: 27-2034239          State of Incorporation: _____

Mailing/Notice Address (if different): _____

Website: _____  Email: _____  Business Phone: _____

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

Provider hereby purchases from Merchant and Merchant hereby sells to Provider, for the price specified above (the "*Purchase Price*"), the amount specified above ("*Purchased Amount*"). Merchant shall pay the entire Purchased Amount to Provider in ☐ DAILY ☐ WEEKLY ("*Periodic*") payments equal to the amount specified above ("*Periodic Amount*") until such time as Provider has received payment in full for the entire Purchased Amount and all other Obligations owing under this Agreement, which period has been estimated below by dividing the Purchased Amount by the Periodic Amount. Merchant hereby irrevocably authorizes the Periodic Amount to be paid and transferred from Merchant's bank accounts via automated clearing house ("*ACH*") to Provider's bank account(s). In the event that there are insufficient cash/receivables during any Periodic period for Merchant to remit any portion of the Periodic Amount or other Obligations, ("*NSF*") then such unpaid Periodic Amount or other Obligation shall be due and payable with the next Periodic payment.

If the Purchase Price is less than $10,000, Merchant shall make the first payment 15 days after the Effective Date; otherwise, the first payment shall be due on the Effective Date ("*First Payment*"), and then the subsequent Periodic Amount(s) as stated above. In the event aggregate Periodic Amount(s) remitted pursuant to this Agreement fall below the Periodic Amount(s) specified above for one week, the aggregate shortfall, together with all Periodic shortfalls going forward, may, in Provider's sole discretion, be paid by Merchant to Provider through Merchant's Processor as stated above, until all Obligations are paid in full, and Merchant hereby irrevocably authorizes the same.

> **NOTICE: SEE OTHER PAGES FOR IMPORTANT INFORMATION. THE ADDITIONAL TERMS AND CONDITIONS ON THE ACCOMPANYING PAGES ARE A PART OF THIS AGREEMENT. PLEASE READ THIS ENTIRE AGREEMENT CAREFULLY.**

### READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant: _____          1 WEST CAPITAL LLC Agreement # FG170711044

MERCHANT REPRESENTED TO PROVIDER THAT, (A) THE PURCHASE PRICE, AND ANY PORTION THEREOF, WILL BE USED BY MERCHANT FOR MERCHANT'S BUSINESS OPERATIONS; (B) ALL BANK AND OTHER ACCOUNTS USED BY MERCHANT TO TRANSFER MONEY ELECTRONICALLY TO PROVIDER, PURSUANT TO THIS AGREEMENT, HAVE BEEN/WILL BE USED BY MERCHANT FOR MERCHANT'S BUSINESS OR COMMERCIAL PURPOSES ONLY; (C) AND BASED UPON MERCHANT'S CALCULATIONS AND EXPERIENCE IN OPERATING ITS BUSINESS, MERCHANT IS CONFIDENT THAT THE PURCHASE PRICE PAID BY 1 WEST CAPITAL LLC IN EXCHANGE FOR THE PURCHASED AMOUNT WILL BE USED IN A MANNER THAT WILL BENEFIT MERCHANT'S CURRENT AND FUTURE BUSINESS OPERATIONS

THE TERMS AND CONDITIONS AND OTHER SCHEDULES, EXHIBITS, AND ANNEXES ATTACHED HERETO AND THERETO FORM A BINDING PART OF THIS AGREEMENT AND ARE HEREBY INCORPORATED BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed and delivered as of the date first above written.

| "MERCHANT" | "PROVIDER" |
|---|---|
| _____ | 1 WEST CAPITAL LLC |
| *[Merchant's Name]* | By: _____ |
| By: _____ | Name: _____ |
| Name: _____ | Title: _____ |
| Title: _____ | |

## GUARANTY

**Personal Guaranty of Performance.** Provider is purchasing the Purchased Amount knowing the risks that Merchant's business may slow down or fail, and Provider assumes these risks based on Merchant's representations, warranties and covenants in the Agreement, (as defined above) which are designed to give Provider a reasonable and fair opportunity to receive the benefit of its bargain. The undersigned Guarantor(s) hereby unconditionally guarantees to Provider, Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in the Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor(s)' obligations are due at the time of any Event of Default under the Agreement.

**Guarantor(s) Waivers.** In the Event of Default, Provider may seek recovery from Guarantor for all of Provider's losses and damages by enforcement of Provider's rights under this Guaranty without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or additional collateral Provider may hold pursuant to the Agreement, or any other guaranty.

Provider does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under the Agreement and this Guaranty if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) Provider's acceptance of the Agreement; and (v) any renewal, extension or other modification of the Agreement or Merchant's other obligations to Provider. In addition, Provider may take any of the following actions without releasing Guarantor from any of its obligations under the Agreement and this Guaranty: (i) renew, extend or otherwise modify the Agreement or Merchant's other obligations to Provider; (ii) release Merchant from its obligations to Provider; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under the Agreement or this Guaranty. Until the Purchased Amount and Merchant's other obligations to Provider under the Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under the Agreement or this Guaranty. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or

> **NOTICE: SEE OTHER PAGES FOR IMPORTANT INFORMATION. THE ADDITIONAL TERMS AND CONDITIONS ON THE ACCOMPANYING PAGES ARE A PART OF THIS AGREEMENT. PLEASE READ THIS ENTIRE AGREEMENT CAREFULLY.**

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant: _____          1 WEST CAPITAL LLC Agreement # FG170711044

any other guarantor, for any amounts paid by it, or acts performed by it, under the Agreement or this Guaranty: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that Provider must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under the Agreement and this Guaranty shall include that amount.

**Guarantor(s) Acknowledgement.** Guarantor(s) acknowledge(s) that: (i) He / She understands the seriousness of the provisions of the Agreement, including the schedules, exhibits, and annexes, the Jury Trial Waiver and Arbitration sections, the Security, and this Guaranty; (ii) He / She has had a full opportunity to consult with counsel of his/her choice; and (iii) He / She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under the Agreement and this Guaranty are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE AGREEMENT (AS DEFINED ABOVE) ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE AGREEMENT.

| X_____ | X_____ |
|---|---|
| Guarantor | Guarantor |
| _____ | _____ |
| Print Name | Print Name |
| _____ | _____ |
| Address | Address |
| _____ | _____ |
| Address | Address |

| **"MERCHANT"** | **"PROVIDER"** |
|---|---|
| _____ | 1 WEST CAPITAL LLC |
| *[Merchant's Name]* | By: _____ |
| By: _____ | Name: _____ |
| Name: _____ | Title: _____ |
| Title: _____ | |

NOTICE: SEE OTHER PAGES FOR IMPORTANT INFORMATION. THE ADDITIONAL TERMS AND CONDITIONS ON THE ACCOMPANYING PAGES ARE A PART OF THIS AGREEMENT.  PLEASE READ THIS ENTIRE AGREEMENT CAREFULLY.

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

Merchant:_____          1 WEST CAPITAL LLC Agreement # FG170711044 _____

# ANNEX I
## OTHER TERMS AND DISCLOSURES

### I. GENERAL

**A. EFFECTIVE DATE AND TERMINATION.** This Agreement shall be effective upon the date first above written (the "*Effective Date*"). Subject to the other provisions hereof, this Agreement shall terminate on the date that the entire Purchased Amount and all other obligations owing to Provider hereunder (collectively, "*Obligations*") are paid or performed in full;

**B. DEFINITIONS AND INTERPRETATION.** Capitalized terms used in this Agreement and defined herein shall have the meanings ascribed herein. All other terms used but not defined herein shall have the meaning given to such terms, if applicable, in the Uniform Commercial Code from time to time in effect in the State of Florida (the "*UCC*"). Section headings are for ease of reference only. Any ambiguities in this Agreement shall not be construed strictly against the drafter of the language concerned, but shall be resolved by applying the most reasonable interpretation under the circumstances, giving full consideration to the intentions of the parties at the time of contracting. This Agreement shall not be construed against any party by reason of its preparation. If any portion of this Agreement is held unenforceable, the remainder of this Agreement shall continue in force.

**C. PAYMENT TO MERCHANT.** Provider shall remit an amount equal to the applicable Purchase Price to Merchant in any payment form elected by Provider, including without limitation, cash, check, or wire transfer. Merchant represents and warrants to Provider that any Information provided relating to any address or account(s) for payment is and shall be true, correct and complete. Payments shall be deemed received by Merchant and duly made when sent by Provider. Provider bears no liability with respect to remitted funds that do not reach Merchant.

**D. PAYMENTS TO PROVIDER.** The Purchased Amount and all other Obligations due and payable by Merchant shall be paid by Merchant to Provider in the manner stated above until the entire Purchased Amount and all Obligations owing Provider are paid to Provider in full. Notwithstanding the foregoing, upon demand by Provider, any or all outstanding Obligations due and payable shall be paid in cash by Merchant directly to Provider. Merchant shall make all payments required hereunder not later than 5:00 p.m. on the date such payment is due in same day funds in U.S. Dollars to Provider at Provider's address listed above or such other address or account as Provider may from time to time designate in writing. Payments by Merchant shall be deemed made when actually received by Provider. Merchant bears sole responsibility with respect to funds that do not reach Provider.

**E. EVIDENCE OF PAYMENTS.** All payments made pursuant to this Agreement and the other instruments, agreements and other documents executed in connection with this Agreement (collectively, together with this Agreement, "*Agreement Documents*") shall be conclusively evidenced by Provider's own accounts and records wherever and whenever made.

### II. MERCHANT'S REPRESENTATIONS AND WARRANTIES; CERTAIN COVENANTS.
Merchant hereby represents, warrants and covenants to Provider as follows as of the Effective Date and on the date of each subsequent transaction between Merchant and Provider (if any):

**A. INFORMATION.** All information provided by or on behalf of Merchant to Provider in connection with this Agreement, the other Agreement Documents and the transactions contemplated hereby and thereby (collectively, "*Transactions*") both prior to an after the Effective Date (collectively, "*Information*") is true, correct and complete in all respects. Merchant shall immediately furnish Provider (i) any additional information needed to maintain the truth, accuracy and completeness of all Information and (ii) such additional Information as Provider may from time to time reasonably request. All financial statements and other Information Merchant submits to Provider fairly, accurately, truly and completely present the financial condition of Merchant as at the date such statements and other Information were provided, were/are prepared in accordance with GAAP and were/are in agreement with Merchant's books, records and accounts. Provider may use Information for commercial purposes and makes no representation, warranty or agreement regarding the security of Information.

**B. EXISTENCE; COMPLIANCE WITH LAWS.** If a corporation, limited liability company or partnership, Merchant (i) is a corporation/limited liability company/partnership duly organized or formed, validly existing and in good standing under the Applicable Laws of the state of its organization or formation. Merchant possesses, is in compliance with and shall maintain all permits, licenses, approvals, consents and other authorizations necessary or advisable for Merchant to conduct its business as conducted on the Effective Date ("*Business*"), to execute and deliver this Agreement and the other Agreement Documents, and to perform its Obligations under this Agreement and consummate the Transactions. Merchant is in compliance with all applicable federal, state and local laws, regulations and orders ("*Applicable Laws*"), all agreements to which Merchant is a party, and, if applicable, all bylaws, articles of incorporation and/or other organizational documents of Merchant.

**C. DUE AUTHORIZATION; ENFORCEABILITY; NON-CONTRAVENTION.** The execution, delivery and performance of this Agreement, Agreement Documents and consummation of the Transactions by Merchant have been duly authorized by all necessary action, and this Agreement and the other Agreement Documents, when executed, will be legal, valid and binding obligation of Merchant, enforceable against Merchant in accordance with their terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally. The undersigned is an authorized officer of Merchant vested with the power and authority to obligate Merchant under this Agreement and the other Agreement Documents. The execution, delivery and performance of this Agreement and the other Agreement Documents is not in contravention of Applicable Law or of the terms of Merchant's organizational documents and

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

1 WEST CAPITAL LLC

Merchant: _____

Agreement # FG170711044

will not result in the breach of or constitute a default under, or result in the creation of a lien or require a payment to be made under any agreement/undertaking to which Merchant is a party or by which it or its property may be bound or affected.

**D. LANGUAGE, ADVICE AND COUNSEL.** Merchant understands English and, to the extent any aspect of this Agreement or any other Agreement Document was unclear to Merchant, Merchant has been advised to seek an interpreter or other counsel (e.g., legal or financial) and Merchant has done so to Merchant's satisfaction. Merchant has read, understood and agreed with each and every term and condition of this Agreement and the other Agreement Documents. Merchant is engaged in commerce for profit, aware of other financing options, is over the age of 18 and is not executing this Agreement under duress or mistake. Merchant shall execute and deliver the acknowledgement attached as Exhibit B hereto.

**E. OWNERSHIP OF PROPERTY; NO LIENS; MAINTENANCE.** Merchant has and at all times will maintain good title to, rights in, and the power to transfer the payments, accounts, future receivables and other Collateral contemplated by this Agreement and the other Agreement Documents. Such property/assets are and will remain unencumbered by any lien or encumbrance. Merchant may grant a lien or encumbrance on such property/assets without the consent of any third party. Merchant owns its business premises and/or occupies its business premises pursuant to valid and enforceable leases or subleases, true, correct and complete copy of which have been furnished to Provider. If Merchant leases any premises or other property/assets, Merchant shall not breach any such lease in any respect. If Merchant owns any premises or other property/assets, Merchant shall comply with all applicable laws and shall pay all taxes, duties and assessments in connection therewith and shall reasonably maintain such property.

**F. SOLVENCY.** Both before and after giving effect to this Agreement, the consummation of any Transaction and use of the proceeds thereof: (i) Merchant is, will be and shall be "solvent" within the meaning of all applicable law, (ii) Merchant is, will be and shall not be left with unreasonably small capital, (iii) Merchant is, will be and shall be able to pay its debts and other obligations as they mature and (iv) Merchant's assets are, will be and shall be substantially greater than its liabilities.

**G. MATERIAL ADVERSE CHANGE.** There has been no material adverse change in Merchant's financial condition or business prospects.

**H. ACCOUNTS.** Each of Merchant's bank account are truly and completely disclosed on Schedule A hereto and Merchant shall immediately inform Provider in writing of any new such accounts. Merchant shall continue to and exclusively use the same account(s) until the Purchased Amount is fully paid to Provider.

**III. OTHER COVENANTS.** Merchant hereby covenants and agrees with Provider as follows:

**A.** **NO OTHER ENCUMBRANCES, RECEIVABLES FINANCINGS.** Merchant shall not enter into any sale, financing, agreement, commitment or other arrangement that is secured by, Transfers, relates to or otherwise involves Merchant's income or future receivables with any person or entity other than Provider. Merchant shall not create, incur, or allow any lien or other encumbrance to exist on any of its future receivables other than those created by this Agreement and the other Agreement documents.

**B.** **FURTHER ASSURANCES.** Merchant shall execute an Authorization substantially in the form of Exhibit A or otherwise as requested by Provider for each account requested by Provider and shall execute any further documents and instruments and take further action as Provider reasonably requests to perfect or continue all of Provider's interests in Merchant's property and assets, future receivables or other Collateral (including any lien or encumbrance), realize upon such items or to otherwise effect the purposes of this Agreement and the other Agreement Documents.

**C.** **ACCOUNTING RECORDS, AND PLACE OF BUSINESS.** Provider or its designated representatives and agents shall have the right during Merchant's normal business hours and at any other reasonable time to examine the interior and exterior of any of Merchant's places of business. Provider may examine, among other things, whether Merchant (a) has a place of business that is separate from any personal residence, (b) is open for business, and (c) has sufficient inventory to conduct Merchant's business. When performing an examination, Provider may photograph the interior and exterior of any of Merchant's places of business, including any signage, and may photograph any Owner. Provider or any of its agents shall have the right to inspect, audit, check, and make extracts from any copies of the books, records, journals, orders, receipts, correspondence that relate to Merchant's accounts or other transactions between the parties thereto and the general financial condition of Merchant and Provider may remove any of such records temporarily for the purpose of having copies made thereof. Provider shall have the right to hire a Certified Public Accountant, licensed in the state where the business is located to perform analysis of the accounting records for the purpose of determining if the Periodic Amounts(s) have been made available for remittance to Provider. Merchant hereby agrees to fully cooperate with such analysis upon the request of Provider.

**D.** **Change of Name or Location or Sale of Business.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to Provider, nor will Merchant change any of its places of business without prior written consent by Provider. Merchant will not sell, dispose, transfer or otherwise convey its business or assets without (i) the express prior written consent of Provider, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to Provider.

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:                    I WEST CAPITAL LLC

Merchant: _____                    Agreement # FG170711044

**TERMS AND CONDITIONS**
**(CONTINUED)**

E.     **Estoppel Certificate.** Merchant will at all times, and from time to time, upon at least 1 day's prior notice from Provider to Merchant, execute, acknowledge and deliver to Provider and/or to any other person, firm or corporation specified by Provider, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been delivered to Provider.

**IV. ADDITIONAL TERMS.**

A. **GRANT OF SECURITY.** Merchant hereby grants Provider, to secure the prompt payment in full of the Purchased Amount and prompt payment and performance in full of all other Obligations, a continuing security interest in (subject only to the security interests of applicable credit card processors), and pledges to Provider, all of Merchant's assets, including but not limited to, all now owned or hereafter acquired or arising accounts, inventory, machinery, furniture, fixtures, equipment, general intangibles, chattel paper, contract rights, documents, instrument, deposit accounts and investment property; and all cash and non-cash proceeds thereof (including, without limitation, insurance proceeds) and proceeds of proceeds, all cash, future receivables and other accounts, rights of payment, and contractual rights, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof(collectively, the "*Collateral*"). Regardless of whether this Agreement is terminated, Provider's Lien in the Collateral shall continue until the Purchased Amount is paid in full and all other Obligations (other than inchoate indemnity obligations) are repaid in full or otherwise performed. Upon such complete payment and performance, Provider shall, at Merchant's sole cost and expense, release its liens in the Collateral and all rights therein shall revert to Merchant. Provider shall not be liable in any respect for any losses or other damages associated with the handling, care, use or maintenance of any Collateral.

B. **FINANCING STATEMENTS AND FILINGS.** Merchant hereby authorizes Provider to file financing statements and make and execute all other filings, agreements and documents Provider deems appropriate, without notice to Merchant, with all appropriate jurisdictions to perfect or protect Provider's interest and rights hereunder. Merchant agrees that Provider will file financing statements naming third party vendor(s) to be retained by Merchant to be named in the financing statement(s) and act as a representative of Merchant as the secured party. Such financing statements may describe the Collateral as determined by Provider in Provider's sole discretion, including without limitation "all of Debtor's assets, including but not limited to, all now owned or hereafter acquired or arising accounts, inventory, machinery, furniture, fixtures, equipment, general intangibles, chattel paper, contract rights, documents, instrument, deposit accounts and investment property; and all cash and non-cash proceeds thereof (including, without limitation, insurance proceeds) and proceeds of proceeds, all cash, future receivables and other accounts, rights of payment, and contractual rights, wherever now owned or hereafter acquired or arising, and all proceeds and products thereof"

**V. EVENTS OF DEFAULT AND REMEDIES.**

A. **EVENTS OF DEFAULT.** Any one of the following shall constitute an event of default (an "Event of Default") under this Agreement:

1. **Payment Default.** Merchant fails to (a) make any Periodic Payment or other payment of Obligations on its due date, or (b) pay any other Obligations within three (3) Business Days after such Obligations are due and payable;

2. **Covenant and Other Provision Default.** Merchant (i) fails or neglects to perform any obligation in Sections I, II, III or IV or (ii) Merchant fails or neglects to perform, keep or observe any other term, provision, condition, covenant or agreement contained in this Agreement or any other Agreement Document and has failed to cure such default within ten (10) days after the occurrence thereof;

3. **Material Adverse Change.** Any material adverse change in Merchant's financial condition or business prospects occurs;

4. **Attachment.** Unless stayed or a bond satisfactory to Provider is posted pending contest by Merchant: (i) any material portion of Merchants property, Future receivables or other assets of Merchant is attached, seized, levied on, or comes into possession of a trustee or receiver and the attachment, seizure or levy is not removed in ten (10) days; (ii) the service of process seeking to attach, e.g., by trustee, funds or other assets of Merchant; (iii) Merchant is restrained or prevented by court order from conducting its Business; (iv) a judgment or other claim in excess of $10,000 becomes a lien on any of Merchant's assets; or (v) a notice of lien, levy, or assessment is filed against any of Merchant's assets by any government agency and not paid within ten (10) days after Merchant receives notice;

5. **Insolvency.** (a) Merchant is unable to pay its debts and other monetary obligations as they become due or otherwise becomes insolvent; (b) Merchant begins an insolvency proceeding; or (c) an insolvency proceeding is begun against Merchant and is not dismissed or stayed within 30 days;

6. **Representations and Warranties.** Merchant or any person or entity acting for Merchant makes any representation, warranty, or other statement now or later during the term of this Agreement, in any other Agreement Document or in any other Information delivered to Provider, and such representation, warranty, or other statement is incorrect in any material respect when made;

7. **Reduction in Value of Collateral.** Merchant performs any act that reduces or fails to perform any act to maintain the value of any Collateral.

8. **Cross Default.** Merchant defaults under any of the terms, covenants and conditions of any other agreement with provider; or

B. **REMEDIES.** While an Event of Default occurs and continues Provider may do any or all of the following:

---

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:                    1 WEST CAPITAL LLC

Merchant: _____                    Agreement # FGI70711044

bringing suit or taking other legal action in any other jurisdiction to realize on the Collateral or any other security for the Obligations, or to enforce a judgment or other court order in favor of Provider. Merchant expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and Merchant hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue, or forum non conveniens and hereby consents to the granting of such legal or equitable relief as is deemed appropriate by such court. Merchant hereby waives personal service of the summons, complaints, and other process issued in such action or suit and agrees that service of such summons, complaints, and other process may be made by registered or certified mail addressed to Merchant at the address set forth at the end of this Agreement and that service so made shall be deemed completed upon the earlier to occur of Merchant's actual receipt thereof or three (3) days after deposit in the U.S. mails, proper postage prepaid. This Agreement is made pursuant to the laws of the state of California and Florida. This Agreement is not subject to Florida or California's usury limit, Cal. Const. art. XV, Section 1. If the Total Cash Advance Amount is a bona fide principal amount of more than $2,500, this cash advance is not subject to the rate limitations in the California Finance Lenders Law. This Agreement is made pursuant to the California Finance Lenders Law, Division 9 (commencing with Section 22000) of the Financial Code. MERCHANT AND PROVIDER EACH WAIVE THEIR RIGHT TO A JURY TRIAL OF ANY DISPUTE, CLAIM, CONTROVERSY OR CAUSE OF ACTION RELATED TO, ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE AGREEMENT DOCUMENTS OR ANY TRANSACTION (COLLECTIVELY, "CLAIMS"). THIS WAIVER IS A MATERIAL INDUCEMENT FOR BOTH PARTIES TO     ENTER     INTO     THIS     AGREEMENT.     EACH     PARTY     HAS     REVIEWED     THIS     WAIVER.
C. ARBITRATION; NO CLASS ACTION.  WITHOUT INTENDING IN ANY WAY TO LIMIT THE PARTIES' AGREEMENT TO LIMIT THEIR RESPECTIVE WAIVERS OF A JURY TRIAL, MERCHANT AND PROVIDER EACH (I) AGREE TO SUBMIT ANY CLAIM TO ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION IN ACCORDANCE WITH ITS THEN EFFECTIVE COMMERCIAL ARBITRATION RULES TO BE ADMINISTERED IN LOS ANGELES COUNTY AND (II) WAIVE THEIR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT (INCLUDING AS A REPRESENTATIVE OR MEMBER), IN EACH CASE WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE AGREEMENT DOCUMENTS OR ANY TRANSACTION. MERCHANT AND PROVIDER AGREE TO ARBITRATE AND DISPUTE ARISING HEREUNDER. THIS WAIVER AND AGREEMENT IS A MATERIAL INDUCEMENT FOR BOTH PARTIES TO ENTER INTO THIS AGREEMENT. EACH PARTY HAS REVIEWED THIS WAIVER AND                                                                                                                                     AGREEMENT.
D.  LIMITATION OF DAMAGES. MERCHANT'S REMEDIES AS A RESULT OF ANY CLAIM SHALL BE LIMITED TO ACTUAL MONETARY DAMAGES INCURRED BY MERCHANT AND MERCHANT SHALL NOT BE ENTITLES TO PUNITIVE                       DAMAGES                       OR                       LOST                       PROFITS.
E.  SUCCESSORS AND ASSIGNS. This Agreement binds and is for the benefit of the successors and permitted assigns of each party. Merchant may not assign this Agreement or any rights or obligations under it without Provider's prior written consent.  Provider has the right, without the consent of or notice to Merchant, to sell, transfer, or assign all or any part of, or any interest in, Provider's obligations, rights,         and         benefits         under         this         Agreement         and         the         other         Agreement         Documents.
F.  INDEMNIFICATION. Without limiting any other obligation herein, Merchant agrees to indemnify, defend and hold Provider and its agents, managers, officers, directors, attorneys or any other Person affiliated with or representing Provider harmless against: (a) all Claims asserted by any other party in connection with the transactions contemplated by the Agreement Documents; and (b) all fees, costs, expenses, losses or damages incurred, or paid by Provider from, following, or arising from transactions between Provider and Merchant (including attorneys' fees and expenses), except for Claims and/or losses directly caused by Provider's gross negligence or willful                                                                                                                                           misconduct.
G. TIME OF THE ESSENCE. Time is of the essence for the performance of all Obligations and other obligations, acts, issuances, etc. in this         Agreement         and         each         other         Agreement         Documents.
H.  SEVERABILITY.  Each  provision  of  this  Agreement  is  severable  from  every  other  provision.
I.  AMENDMENTS IN WRITING; INTEGRATION. All amendments to this Agreement must be in writing and signed by both Provider and Merchant. This Agreement and the other Agreement Documents represent the entire agreement about this subject matter and supersede prior negotiations or agreements. All prior agreements, understandings, representations, warranties, and negotiations between the parties about the subject matter of this Agreement and the Agreement Documents merge into this Agreement and the Agreement Documents. J. COUNTERPARTS. This Agreement may be executed manually or via electronic signature in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. Counterparts may be delivered by facsimile or other electronic scan transmission (e.g., .pdf/email). As such, this Agreement is deemed "signed" if it includes a digital signature, symbol and/or action that is adopted or performed by either party or party's electronic agent with the present intent to authenticate or manifest assent to this Agreement.

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:                                        I WEST CAPITAL LLC

Merchant: _____                                        Agreement # _____

1. **Protection of Collateral.** Make any payments and do any acts it considers necessary or reasonable to protect the Collateral and/or its security interest in the Collateral. Merchant shall assemble the Collateral at Merchant's expense if Provider requests and make it available as requested.

2. **Settlement of Accounts.** Settle or adjust accounts, disputes and claims directly with account debtors for amounts on terms and in any order that Provider considers advisable.

3. **Rights and Remedies.** Exercise, protect and enforce all rights and remedies available to Provider under the Agreement or other Agreement Documents or at law or equity, including all remedies provided under the UCC (including disposal of the Collateral pursuant to the terms thereof). All rights, powers and remedies of Provider in connection with this Agreement are cumulative and are not exclusive and are in addition to any other rights, powers or remedies provided by law or equity. Provider shall be entitled to reimbursement by Merchant of all costs, expenses and fees (including legal fees) incurred in connection with any such enforcement.

4. **Book and Records.** Demand and receive possession of all Merchant's books and records.

5. **Indemnification.** Merchant shall indemnify, defend and hold Provider harmless from and against all liabilities, losses, suits, actions, costs or expenses, including but not limited to court costs and attorney's fees, that Merchant may suffer, incur or sustain related to (i) a breach by Merchant of its representations, warranties, covenants or agreements set forth in this Agreement and the other Agreements Documents, or (ii) the enforcement of Provider's remedies set forth above.

6. Provider may enforce the provisions of the Personal Guaranty of Performance against the Guarantor(s).

7. Provider may debit Merchant's depository account(s) wherever situated by means of ACH debit or facsimile Signature on a computer-generated check drawn on Merchant's bank account(s) or otherwise for all sums due to Provider.

**C. APPLICATION OF PAYMENTS AND PROCEEDS.** For purposes of this Section, the Purchased Price shall be treated as a principal amount (the "*Principal*"), and the Purchased Amount minus the Purchase Price shall be treated as interest (the "*Interest*"). Unless an Event of Default has occurred and is continuing, Provider shall apply any funds in its possession, whether from Merchant account balances, payments, or proceeds realized as the result of any collection of accounts or other disposition of the Collateral; *first*, to Provider's fees, costs and expenses reimbursable or otherwise payable by Merchant hereunder, including without limitation, the reasonable costs, expenses, liabilities, obligations and attorneys' fees incurred by Provider in the exercise of its rights under this Agreement; *second*, to the Principal ; *third*, to the Interest; *fourth*, to interest due upon any of the Obligations; and *fifth*, to the remaining Obligations and any applicable fees and other charges, in such order as Provider shall determine in its sole discretion. Any surplus shall be paid to Merchant or other persons legally entitled thereto; Merchant shall remain liable to Provider for any deficiency. If an Event of Default has occurred and is continuing, Provider may apply any funds in its possession, whether from Merchant account balances, payments, proceeds realized as the result of any collection of accounts or other disposition of the Collateral, or otherwise, to the Obligations in such order as Provider shall determine in its sole discretion. Any surplus shall be paid to Merchant or other Persons legally entitled thereto; Merchant shall remain liable to Provider for any deficiency.

**D LIABILITY FOR COLLATERAL.** So long as Provider does not act grossly negligently or in bad faith with respect to realizing upon, transferring or handling the Collateral, under no circumstances shall Provider be responsible or liable for: (a) the safekeeping of the Collateral; (b) any loss or damage to the Collateral; (c) any diminution in the value of the Collateral; or (d) any act or default of any Account Debtor, other obligor, carrier, warehouseman, bailee, or other Person. Merchant bears all risk of loss, damage or destruction of the Collateral.

**E. NO WAIVER.** Provider's failure, at any time or times, to require strict performance by Merchant of any provision of this Agreement or any other Agreement Document shall not waive, affect, or diminish any right of Provider thereafter to demand strict performance and compliance herewith or therewith. No waiver hereunder shall be effective unless in writing and signed by Provider and then is only effective for the specific instance and purpose for which it is given. Provider's exercise of one right or remedy is not an election, and Provider's waiver of any Event of Default is not a continuing waiver. Provider's delay in exercising any remedy is not a waiver, election, or acquiescence.

**F DEMAND WAIVER.** Merchant waives demand, notice of default or dishonor, notice of payment and nonpayment, notice of any default, nonpayment at maturity, release, compromise, settlement, extension, or renewal of accounts, documents, instruments, chattel paper, and guarantees held by Provider on which Merchant is liable

**G. Debt Settlement Organizations.** Merchant is prohibited from engaging the services of any third-party to restructure, negotiate, consolidate, or settle any debt arising from this Agreement. Engaging such services shall be deemed a default. In addition to standard default fees imposed by this Agreement, 1WC shall impose a penalty equal to 50% of the outstanding balance in the event such third party services are engaged.

## VI. MISCELLANEOUS

**A. NOTICES.** All notices, consents, requests, approvals, demands, or other communications (collectively, "Communications") by any Party must be in writing and delivered to the applicable Party at the address herein indicated or otherwise as indicated in writing by such Party.

**B. CHOICE OF LAW; JURISDICTION; VENUE; NO JURY TRIAL.** Florida law governs the Agreement Documents without regard to principles of conflicts of law. Merchant and Provider each submit to the exclusive jurisdiction of the State and Federal courts in Broward County, Florida; provided, however, that nothing in this Agreement shall be deemed to operate to preclude Provider from

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:

1 WEST CAPITAL LLC

Agreement # FG170711044

Merchant: _____

**K.** SURVIVAL. All covenants, representations and warranties made in this Agreement continue in full force until this Agreement has terminated pursuant to its terms and all Obligations (other than inchoate indemnity obligations and any other obligations which, by their terms, are to survive the termination of this Agreement) have been satisfied. Notwithstanding anything to contrary herein, the obligations of Merchant to indemnify, defend and hold Provider harmless, Merchant's representations and warranties, choice of law, jurisdiction, venue and forum, waiver of jury trial and class action suit, agreement to arbitrate and each, and each of Provider's disclaimers and exemptions from liability shall survive until the statute of limitations with respect to all Claims related hereto shall have run.

**L.** SETOFF. Merchant hereby grants to Provider a Lien and a right of setoff as security for all Obligations to Provider, whether now existing or hereafter arising upon and against all deposits, credits, Collateral and other property, now or hereafter in the possession, custody, safekeeping or control of Provider (including future receivables). ANY AND ALL RIGHTS TO REQUIRE PROVIDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE OBLIGATIONS, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF MERCHANT, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

**M.** No Liability. In no event will Provider be liable for any claims asserted by Merchant or Guarantor(s) under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantor(s) will be jointly liable for all of Provider's legal fees and expenses resulting therefrom. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against Provider or any of its affiliates relating to any (i)investigation undertaken by or on behalf of Provider as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement. Provider is not responsible and shall not be liable for any actions taken by Merchant's bank(s) which are not contemplated or authorized herein, and Merchant hereby agrees to hold Provider harmless from all actions of any of Merchant's bank(s).

**N.** Confidentiality. Merchant understands and agrees that the terms and conditions of the products and services offered by Provider, including this Agreement and any other Provider documentations (collectively, "Confidential Information") are proprietary and confidential information of Provider. Accordingly unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of Provider to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses Confidential Information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles Provider to not only damages and legal fees but also to both a temporary restraining order and a preliminary injunction without bond or security.

**O.** Publicity. Merchant and each of Merchant's Owners and all Guarantors hereby authorize Provider to use its, his or her name in listings of clients and in advertising and marketing materials.

**P.** D/B/As. Merchant hereby acknowledges and agrees that Provider may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between Provider and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**Q.** To the extent that any provision in this Agreement is inconsistent with any statutory provision of the California Finance Lenders Law, ("CFLL") then such CFLL statutory provision shall prevail. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

> NOTICE: This cash advance is made by 1 WEST CAPITAL LLC, a Florida limited liability company, located at 1250 East Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009, Phone: (954) 248-1268, License # 60DBO-35888, pursuant to the California Finance Lenders Law, Division 9 (commencing with Section 22000) of the Financial Code. By entering this Promissory Note and Security Agreement, You represent that no person has performed any act as a broker in connection with the making of this cash advance.

☐ Broker has participated.
THIS CASH ADVANCE IS MADE BY 1 WEST CAPITAL LLC. UNDER ITS CALIFORNIA FINANCE LENDER'S LICENSE. THAT LICENSE IS ADMINISTERED BY THE CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT. FOR INFORMATION OR

READ, UNDERSTOOD, ACKNOWLEDGED AND AGREED:                    1 WEST CAPITAL LLC

Merchant: _____                    Agreement # FG170711044

# SCHEDULE A
## BANK ACCOUNTS

BANK NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK/ NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK/ NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

BANK NAME: _____
BANK ADDRESS: _____
ACCOUNT HOLDER: _____
ACCOUNT NAME: _____
ROUTING # (9 DIGITS) _____
ACCOUNT# _____

## EXHIBIT A
### AUTHORIZATION – FUNDS SETTLEMENT

This ACH Authorization – Funds Settlement, dated _____ July _____ 12 , 20 17  (as amended, restated or otherwise modified from time to time, this "*Authorization*") is executed by Toda Tech _____ ("*Merchant*") in connection with that certain ACH Merchant Agreement, dated as of _____ July _____ 12 , 20 17  (as amended, restated or otherwise modified from time to time and including all Annexes, Schedules and Exhibits thereto, the "Agreement"), between (i) 1 WEST CAPITAL LLC, a Florida limited liability company ("Provider") and (ii) Merchant. Capitalized terms used herein and defined herein shall have the meanings ascribed herein; capitalized used herein and not defined herein shall have the meanings ascribed in the Agreement, if any.

Merchant hereby irrevocably authorizes Provider and/or its designated assignees to initiate automated clearinghouse ("*ACH*") transfer entries, wire transfers and other transfers and to consummate debits and/or credits to Merchant's bank or other account identified below (the "*Account*") for payments relating to the Agreement and any other amounts or other obligations from time to time owing by Merchant to Provider. This Authorization shall remain in effect until Provider shall have provided written notice that the Agreement has been terminated and all Obligations owing thereunder and otherwise by Merchant (other than unrealized contingent indemnification obligations) have been paid or performed in full. Merchant may not unilaterally terminate this Authorization. Among other things, this Authorization creates, evidences and perfects Provider's control over and interest in the Account. MERCHANT HEREBY WAIVES AND AGREES TO INDEMNIFY, DEFEND AND HOLD HARMLESS PROVIDER AND THE BANK/ IDENTIFIED BELOW AGAINST ALL CLAIMS, LOSSES, LIABILITIES OR DAMAGES IN ANY WAY RELATED TO ANY TRANSFER INITIATED AND/OR CONSUMMATED HEREUNDER.  THE TERMS AND CONDITIONS ATTACHED AS ANNEX I TO THE AGREEMENT ARE HEREBY INCORPORATED BY REFERENCE AS THOUGH SET FORTH HEREIN IN FULL. MERCHANT REPRESENTS, WARRANTS AND AGREES THAT, (A) MERCHANT SHALL NOT ATTEMPT TO UNILATERALLY TERMINATE THIS AUTHORIZATION, (B) THE PERSON EXECUTING THIS AUTHORIZATION IS DULY AUTHORIZED BY MERCHANT, (C) UPON EXECUTION THIS AUTHORIZATION SHALL BE A VALID AND BINDING IRREVOCABLE AUTHORIZATION ENFORCEABLE IN ACCORDANCE WITH ITS TERMS, (D) THE PERSON EXECUTING THIS AUTHORIZATION ON BEHALF OF MERCHANT IS AN AUTHORIZED SIGNATORY ON THE ACCOUNT (E) ALL INFORMATION PROVIDED REGARDING THE ACCOUNT IT TRUE, CORRECT AND COMPLETE. (F) THE PURCHASE PRICE, AND ANY PORTION THEREOF, WILL BE USED BY MERCHANT FOR MERCHANT'S BUSINESS OPERATIONS, (G) ALL BANK AND OTHER ACCOUNTS USED BY MERCHANT TO TRANSFER MONEY ELECTRONICALLY TO PROVIDER, PURSUANT TO THIS AGREEMENT, HAVE BEEN/WILL BE USED BY MERCHANT FOR MERCHANT'S BUSINESS OR COMMERCIAL PURPOSES ONLY (H) AND BASED UPON MERCHANT'S CALCULATIONS AND EXPERIENCE IN OPERATING ITS BUSINESS, MERCHANT IS CONFIDENT THAT THE PURCHASE PRICE PAID BY 1 WEST CAPITAL LLC IN EXCHANGE FOR THE PURCHASED AMOUNT WILL BE USED IN A MANNER THAT WILL BENEFIT MERCHANT'S CURRENT AND FUTURE BUSINESS OPERATIONS

## ACCOUNT

BANK NAME: _____ Chase Bank _____

BANK ADDRESS: _____

ACCOUNT HOLDER: _____

ACCOUNT NAME: _____

ROUTING # (9 DIGITS) _____

ACCOUNT# _____ 978205060 _____

IN WITNESS WHEREOF, Merchant has caused this Authorization to be duly executed and delivered as of the date first above written.

| "MERCHANT" | ACKNOWLEDGED AND ACCEPTED: |
|---|---|
| _____ | "PROVIDER" |
| *[Merchant's Name]* | |
| By: _____ | 1 WEST CAPITAL LLC |
| Name: _____ | By: _____ |
| Title: _____ | Name: _____ |
| | Title: _____ |

**EXHIBIT B**

**ACKNOWLEDGEMENT**

This Acknowledgment, dated _____ July _____ 12 ___, 17 20 ___ (this *"Acknowledgment"*) is executed by Toda Tech _____ (*"Merchant"*) in connection with that certain ACH Merchant Agreement, dated as of _____ July _____ 12 20 ___ 17 (the *"Agreement"*), between (i) 1 WEST CAPITAL LLC, a Florida limited liability company (*"Provider"*) and (ii) Merchant. Capitalized terms used herein and defined herein shall have the meanings ascribed herein; capitalized used herein and not defined herein shall have the meanings ascribed in the Agreement, if any.

Merchant hereby acknowledges receipt of a fully executed copy of the Agreement on the date first written above.

ACKNOWLEDGED, ACCEPTED AND AGREED:

**MERCHANT:**

By: _____

Name: _____

Title: _____

13 of 14

## Exhibit C
## MERCHANT CERTIFICATION

This Certification, dated _____July_____ 12, 20 17 (this "*Certification*") is executed by Toda Tech_____ ("*Merchant*") in connection with that certain ACH Merchant Agreement, dated as of _____July_____ 12, 20__ (as amended, restated or otherwise modified from time to time, the "*Agreement*"), between (i) 1 WEST CAPITAL LLC a Florida limited liability company ("Provider") and (ii) Merchant. Capitalized terms used herein and defined herein shall have the meanings ascribed herein; capitalized used herein and not defined herein shall have the meanings ascribed in the Agreement, if any.

1.      I am the duly elected, qualified and acting _____ (Insert Title) of Merchant. I am an authorized officer of Merchant vested with the power and authority to obligate Merchant under the Agreement and the other Agreement Documents.

2.      I am familiar with the day-to-day business operations of Merchant, including Merchants liabilities, profits, losses, cash flows, income and other financial results.

3.      I understand English and, to the extent any aspect of the Agreement or any other Agreement Document was unclear to me, I have been advised to seek an interpreter or other counsel (e.g., legal or financial) and I have done so to my satisfaction. I have read, understood and agreed with each and every term and condition of the Agreement and the other Agreement Documents.

4.      All Information provided by or on behalf of Merchant to Provider in connection with the Agreement, the other Agreement Documents and the Transactions, and each representation and warranty in connection therewith, is and remains true, correct and complete in all respects, except as disclosed to Provider in writing and fully corrected prior to the date hereof.

5.      If a corporation/limited liability company/partnership, Merchant is a corporation/limited liability company/partnership duly organized or formed, validly existing and in good standing under the Applicable Laws of the state of its organization or formation. Merchant possesses, is in compliance with all permits, licenses, approvals, consents and other authorizations necessary or advisable for Merchant to conduct its Business, to execute and deliver the Agreement and the other Agreement Documents, and to perform its Obligations under this Agreement and consummate the Transactions. Merchant is in compliance with all applicable federal, state and local laws, regulations and orders ("*Applicable Laws*"), all agreements to which Merchant is a party, and, if applicable, all bylaws, articles of incorporation and/or other organizational documents of Merchant.

6.      The execution, delivery and performance of the Agreement, Agreement Documents and consummation of the Transactions by Merchant have been duly authorized by all necessary action, and this Agreement and the other Agreement Documents, when executed, will be legal, valid and binding obligation of Merchant, enforceable against Merchant in accordance with their terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally. The execution, delivery and performance of the Agreement and the other Agreement Documents is not in contravention of Applicable Law or of the terms of Merchant's organizational documents and will not result in the breach of or constitute a default under, or result in the creation of a lien or require a payment to be made under any agreement/undertaking to which Merchant is a party or by which it or its property may be bound or affected.

7.      As of the date hereof, no claim, action, suit, or other proceeding or investigation is pending threatened against Merchant.

8.      As of the date hereof, there has been no material adverse change in Merchant's financial condition or business prospects.

9.      As of the date hereof, there has been no event, act or occurrence that constitutes or would constitute (given inaction and/or the passage of time) an Event of Default.

10.     The financial information provided/attached herewith is true and complete in all respects.

IN WITNESS WHEREOF, I have caused this Certification to be duly executed and delivered as of the date first above written.

BY: _____
Name: _____
Title: _____



1250 E. Hallandale Beach Blvd.,
Suite #409
Hallandale Beach, Florida 33009
954-248-1268

## Terms of Use for Text Message (SMS)

1.  Your wireless carrier's standard messaging rates apply to SMS correspondence. 1 West Capital, LLC does not charge for any content; however, downloadable content may incur additional charges from your wireless carrier. Please contact your wireless carrier for information about your messaging plan. Your carrier may impose message or charge limitations on your account that are outside of our control. All charges are billed by and payable to your wireless carrier. **Merchants Initials _____**

2.  You represent that you are the owner, or authorized user of the wireless device you use to receive the service, and that you are authorized to approve the applicable charges. **Merchants Initials _____**

3.  We will send you messages periodically, and only with your explicit agreement as indicated by your continuation of the process flow. **Merchants Initials _____**

4.  We will not be liable for any delays or failures in your receipt of any SMS messages as delivery is subject to effective transmission from your network operator and processing by your mobile device. SMS message services are provided on an AS IS, AS AVAILABLE basis. **Merchants Initials _____**

5.  Data obtained from you in connection with this SMS service may include your mobile phone number, your carrier's name, and the date, time and content of your messages and other information that you may provide. We may use this information to contact you and to provide the services you request from us, discuss your advance, current and past due payments and to otherwise operate, develop and improve the service. Your wireless carrier and other service providers may also collect data from your SMS usage, and their practices are governed by their own policies. We will only use the information you provide to the service to transmit your text message or as otherwise described in this document. Nonetheless, we reserve the right at all times to disclose any information as necessary to satisfy any law, regulation or governmental request, to avoid liability, or to protect our rights or property. When you complete forms online or otherwise provide us information in connection with the service, you agree to provide accurate, complete, and true information. **Merchants Initials _____**

6.  The service as well as the content and materials received through the service are proprietary to us and our licensors, and is for your personal and commercial use only. You shall not damage, impair, interfere with or disrupt the service or its functionality. **Merchants Initials _____**

7.  We reserve the right to alter charges and/or these terms and conditions from time to time. We may suspend or terminate the service to you if we believe you are in breach of our terms and conditions. Your service is also subject to termination in the event your wireless service terminates or lapses. We may discontinue the service at any time. **Merchants Initials _____**

8.  Additionally, you agree that we may send any SMS Statement Notifications through your communication service provider in order to deliver them to you. You agree to provide a valid mobile phone number for these services. You further agree to indemnify, defend and hold us harmless from and against any and all claims, losses, liability, cost and expenses (including reasonable attorneys' fee) arising from your provision of a mobile phone number that is not your own or your violation of applicable federal, state or local law, regulation or ordinance. Your obligation under this paragraph shall survive termination of the Agreement. SMS Statement Notification is provided for your convenience only. **Merchants Initials _____**

9.  If you have any questions, contact 1 West Capital at 954-248-1268
    We do not charge for help or info messages; however, your normal carrier rates apply. **Merchants Initials _____**

1250 E. Hallandale Beach Blvd., Suite #409, Hallandale Beach, Florida 33009 | Toll Free:
954-248-1268



**1 West Capital**
MERCHANT FUNDING SOURCE

July 12, 2017

Socaldeal INC

10758 Washington Blvd

Culver City, CA 90232

Re: Refi.Advance # 7182

Mr. Simon Yaftadonay

Congratulations and thank you for your interest in refinancing with 1st West Capital. We are pleased to inform you that you are qualified for an additional merchant cash advance in the amount of $ 225,000.00

Your previous RTR balance in the amount of $ 0.00 _ ; BALANCE AS OF TODAY IS $ 0.00 must be paid in full through your future merchant cash advance or paid in full before the refinance is ratified in order for your next merchant cash advance to be remitted.

Thank you,

1st West Capital

Agreed:

_____     _____     07/12/2017

Merchant Signature                Print Name                            Date



## ADDENDUM TO CONTRACT

## NO STACKING

This addendum is to certify that I <u>Simon Yaftadonay</u> **of** [ Socaldeal INC ] agree and understand that while an outstanding balance with 1st West Capital LLC exists; I am prohibited from initiating a Cash Advance or Loan Product Advance with another Merchant Cash Advance company other than 1st West Capital LLC. Doing so would place me in breach of contract and <u>Simon Yaftadonay</u> [ Socaldeal INC ] will be liable for the entire amount owed to 1st west Capital LLC immediately plus attorneys' fees, costs, and liquidated damages. Liquidated damages is equal to $2,500.00 or 20% of the outstanding balance whichever is greater.

**<u>Amounts received from any subsequent merchant cash advances will be subject to collections by 1st West Capital to satisfy the outstanding account balance.</u>**

By their signatures below the parties agreed to be bound by this addendum.

Name: _____     Name: _____

Signature: _____     Signature: _____

## NO STACKING ADDENDUM



**APPENDIX A: THE FEE STRUCTURE**

**One Time Fees (deducted from origination amount)**

Underwriting Fee: 0% of origination amount

**Right of Offset**

1. Notwithstanding any other provision of the Merchant Agreement, 1 West Capital (1WC) shall have the right to offset any amounts paid in excess of the terms of this Agreement against amounts that may be due under future agreements with 1WC, including renewal agreements.

**Other Fees**

1. NSF / Returned Fee: $75.00 each
   - This is a default of the Merchant Agreement.

2. Blocked or Rejected ACH Fee: $100.00
   - Fee is applied when the Merchant directs its banking institution to reject, block, or stop 1WC's ACH Collection Protocol. This is a default of the Merchant Agreement.

3. Bank Change Fee: $50.00
   - Fee is applied when the Merchant requires or directs a change of account(s) to be debited requiring 1WC to reconfigure ACH Collection Protocol.

4. Default Fee: $2,500.00
   - Fee is applied to any breach of the merchant agreement including but not limited to modified payment arrangements (extension fees may also apply).

5. ACH Fee: $15.00
   - Next day funding

6. UCC Release Fee: $100.00

7. Extension Fee:
   - Merchant may request a payment extension not to exceed 10 days. An extension fee equal to 60% of the Daily Specified Amount shall be assessed for each day of nonpayment. 1WC reserves the right to deny Merchant's request to extend payments.

8. De-conversion Fee
   - Merchant agrees to pay the greater of: (a) one-half of the daily receivable rate multiplied by the number of remaining days of the subject agreement or (b) $5,000, whichever is greater.

9. DEBT SETTLEMENT ORGANIZATIONS. Merchant is prohibited from engaging the services of any third-party to restructure, negotiate, consolidate, or settle any debt arising from this Agreement. Engaging such services shall be deemed a default. In addition to standard default fees imposed by this Agreement, 1WC shall impose a penalty equal to 50% of the outstanding balance in the event such third party services are engaged.

Merchant's Signature _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "C"

# GM il

JACK SHEMTOV <jshemtov@socaldeal.com>

---

## Fwd: MODIFICATION OFFER

2 messages

---

Simon Yiftach <simon@socaldeal.com>                                    Tue, Oct 3, 2017 at 10:58 AM
To: JACK SHEMTOV <jshemtov@socaldeal.com>


*SOCALDEAL WILL BE CLOSED THURSDAY AND FRIDAY Oct 5th AND Oct 6th / Oct 12 AND Oct 13.*

*WWW.FUNGAMECARDS.COM*

*WWW.SOCALDEAL.COM*

*Thanks*

 SoCalDeal

*Simon Yaftadonay*
*EMAIL: simon@socaldeal.com*
*AIM: simonyiftakh / SKYPE: yiftachsimon*

*PHONE:310-202-6666 EXT 112*


---------- Forwarded message ----------
From: **Nicole Stirrup** <nstirrup@1stglobalcapital.com>
Date: Tue, Oct 3, 2017 at 10:44 AM
Subject: MODIFICATION OFFER
To: "SIMON@SOCALDEAL.COM" <SIMON@socaldeal.com>


Simon,


Per our conversation and after reviewing bank statements for each account we can provide the
following options...


FG170711044- Daily payments of $1959.18

The past due balance in the amount of $11,905.08 needs to be recovered and the attached unblock form needs signed and sent back before accepting with offer.

1. A 10 day extension, If extension is accepted a fee of $4,702.03 needs to paid up front we wont draft the account for 10 days and once the extension is over on the 11th day your account will then be drafted the past due balance of $7,053.05
2. We can lower the daily payment for $1,175.50 for 10 days.

FG170209006 - Daily payments of $1,789.77

The past due balance in the amount of $10,888.62 needs to be recovered and the attached unblock form needs signed and sent back before accepting with offer.

1. A 10 day extension, If extension is accepted a fee of $4,295.44 needs to paid up front we wont draft the account for 10 days and once the extension is over on the 11th day your account will then be drafted the past due balance of $6,443.18
2. We can lower the daily payment for $1,073.86 for 10 days.

As previously stated the balance is nonnegotiable.

Nicole Stirrup

1st Global Capital Financial Services 
1250 East Hallandale Beach Blvd.
Suite #409
Hallandale Beach, FL 33009

T: 786-5304204 ext 651
D: 786-2090350
E: Nstirrup@1stGlobalCapital.com

1 GLΦBAL
  CAPITAL